ORIGINAL

FILED
OCT 1 2 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BRISTOL BAY AREA HEALTH CORPORATION**<br>6000 Kanakanak Road<br>P.O. Box 130<br>Dillingham, AK 99576<br><br>PLAINTIFF,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>DEFENDANT. | No. 07-725 C |

**COMPLAINT**

The Plaintiff, for its cause of action against the Defendant named above, alleges as follows:

**INTRODUCTION AND SUMMARY**

1. This is a suit under the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, for money damages against the United States for breach of contract by the Indian Health Service ("IHS"), an agency in the Department of Health and Human Services ("DHHS"). Plaintiff, the Bristol Bay Area Health Corporation ("BBAHC"), is a tribal organization that operates public health facilities and provides public health services to Alaska Natives and other beneficiaries pursuant to its agreements with the IHS under the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, as amended, 25 U.S.C. § 450 *et seq.* ("ISDEAA").

2. The IHS breached BBAHC's contracts by failing to pay the full contract support costs ("CSC") owed to BBAHC under the ISDEAA and BBAHC's contracts, the Alaska Tribal Health Compact ("ATHC") and annual funding agreements ("AFAs") for fiscal years ("FYs")

1993-1999. Specifically, the IHS underpaid indirect costs ("IDC"), a type of CSC that allows contractors to pay for administrative and overhead expenses so that contractors can operate programs at the same level the Secretary would have done. 25 U.S.C. § 450j-1(a)(2), (3).

3. BBAHC's claims are directly supported by the Supreme Court's ruling in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005), where the Court held that the IHS breached tribal contractors' agreements by failing to pay the full CSC required by the ISDEAA, when the IHS had funds available to reprogram from its unrestricted lump-sum appropriation as it did in FYs 1994-1997.

**JURISDICTION**

4. This controversy arises under ISDEAA agreements between the United States and BBAHC for operation of Indian health programs. This court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a) and the Indian Tucker Act, 28 U.S.C. § 1505, as well the ISDEAA and the CDA. *See* 25 U.S.C. § 450m-1(a) (providing original jurisdiction to Court of Federal Claims, concurrent with United States district courts, over civil actions for money damages arising under ISDEAA contracts); 41 U.S.C. § 609(a) (granting jurisdiction to Court of Federal Claims over CDA claims).

5. On July 5, 2005, BBAHC faxed and mailed the IHS letters requesting a contracting officer's decision on CSC claims for FYs 1995-1999. On November 30, 2006, BBAHC faxed and mailed the IHS two more letters requesting a contracting officer's decision on CSC claims for FY 1993 and FY 1994.

6. Dr. Charles Grim, then Director of the IHS, denied BBAHC's claim for FY 1996 in a letter dated October 25, 2006. In a letter dated April 20, 2007, Dr. Grim denied the claim for

FY 1995. The IHS has not issued a decision on the other claims and the time in which it has had to act is reasonable, so they are deemed denied. 41 U.S.C. § 605(c)(5).

7. BBAHC has filed this action for review of Dr. Grim's decisions, and failure to decide the claims for FYs 1993-1994 and 1997-1999, within twelve months of receiving the decisions, as required by the CDA. 41 U.S.C. § 609(a). Therefore this Court has jurisdiction under the CDA and Section 110 of the ISDEAA. *Id.*; 25 U.S.C. § 450m-1(a).

**PARTIES**

8. Plaintiff BBAHC is a tribal organization that provides health services to 34 villages in Southwest Alaska. For many years, BBAHC has contracted with the United States under the ISDEAA to provide health care services to Alaska Natives and other beneficiaries. Since FY 1995, BBAHC has been a Co-Signer of the Alaska Tribal Health Compact ("ATHC"), under which annual funding agreements ("AFAs") were negotiated pursuant to Title III of the ISDEAA, 25 U.S.C. § 450f note (for FYs 1995-2000), and, since 2001, pursuant to Title V of the ISDEAA, 25 U.S.C. § 458aaa *et seq*.

9. Defendant United States is a party to every ISDEAA agreement entered into by BBAHC. *See* 25 U.S.C. § 450*l*(c) (Model Agreement § 1(a)(1); ATHC (compact "Between Certain Alaska Native Tribes and the United States of America"). The Secretary of DHHS, through the IHS, is charged by law with the responsibility for implementing the ISDEAA, and other health laws benefiting Indians, on behalf of the United States.

**STATEMENT OF FACTS**

The ISDEAA

10. During all of the years at issue, BBAHC provided health care services to eligible individuals pursuant to ISDEAA agreements entered into with the Secretary of DHHS

("Secretary") and the IHS under Title I (FYs 1993 and 1994) and Title III (FY 1995-1999) of the ISDEAA, 25 U.S.C. § 450 *et seq.*[1]

11. The ISDEAA authorizes BBAHC and other tribes and tribal organizations to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide BBAHC two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 450j-1(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see id.* § 450j-1(a)(2) and (3).[2] *See also* FY 1996 AFA § 4(b) (BBAHC "shall receive contract support as defined in sections 106(a)(2) and (3)" of the ISDEAA); FY 1997 AFA § 4(b) (same).

12. There are three types of CSC: (1) start-up costs, which are one-time costs to plan, prepare for and assume operation of a new or expanded PFSA, *see* 25 U.S.C. § 450j-1(a)(5) & (6); (2) indirect costs ("IDC"), costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see id.* § 450j-1(a)(2); and (3) direct CSC

---

[1] In 2000, Congress repealed Title III, and replaced it with the current Title V, in the Tribal Self-Governance Amendments of 2000, Pub. L. No. 106-260, *codified at* 25 U.S.C. § 458aaa *et seq.*

[2] Section 106(a)(2) of the ISDEAA mandates as follows:

> (2) There shall be added [to the 106(a)(1) amount] contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which—
> (A) normally are not carried on by the respective Secretary in his direct operation of the program; or
> (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

25 U.S.C. § 450j-1(a)(2).

("DCSC"), expenses directly attributable to a certain PFSA but not captured in either the IDC pool or the 106(a)(1) amount, such as workers compensation insurance or other expenses the Secretary would not have incurred because, for example, the government is self-insured, *see id.* § 450j-1(a)(3)(A).

13. The ISDEAA requires that, upon approval of the contract, "the Secretary shall add the full amount of funds to which the contractor is entitled under [section 106(a) of the ISDEAA]," including CSC. 25 U.S.C. § 450j-1(g); *see also Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses."). As noted above, one component of the required CSC under section 106(a) is IDC funding, which covers administrative and overhead costs, allowing all program funds to be used to provide health care PSFAs for Alaska Natives and other beneficiaries.

14. For BBAHC, as for most tribal contractors, the "full amount" of IDC was (and is) determined by multiplying a negotiated IDC rate by the amount of the direct cost base. *See* 25 U.S.C. § 450j-1(c)(2)-(6) (Secretary to report annually to Congress on IDC rates, direct cost bases, IDC pool amounts, and IDC shortfalls). In the agreements, the IHS agreed to calculate and pay IDC in accordance with Indian Self-Determination Memorandum ("ISDM") 92-2 and BBAHC's indirect cost agreements. *See, e.g.*, FY 1995 AFA § 4(b); FY 1996 AFA § 4(b). ISDM 92-2 provides that the amount of IDC to be paid "will be determined by applying the negotiated rate(s) to the direct cost base amount for this purpose." ISDM 92-2 § 5.B(1).[3]

15. This action is to recover unpaid IDC in FYs 1993-1999, years in which the IHS vastly underpaid BBAHC, as discussed next.

[3] The successor IHS CSC policy, which took effect retroactively to April 1, 1996, retains the identical method of determining IDC. *See* IHS Circular No. 96-04 § 4.A.2.c.i (IDC "will be determined by applying the negotiated rate(s) to the direct cost base amount for this purpose").

The CSC Shortfalls

16. On March 1, 2005, the U.S. Supreme Court held that the amounts available under section 106(a) to pay tribes the full CSC due under their contracts include the IHS's entire unrestricted lump-sum appropriation. *Cherokee Nation v. Leavitt*, 543 U.S. 631, 642-43 (2005). Thus the IHS should have reprogrammed funds to pay the tribal contractors the full CSC due under their contracts for FY 1994 through FY 1997 when Congress appropriated lump sums for the IHS without earmarking an amount for CSC.

17. However, the IHS took no such action. Instead the agency vastly underpaid CSC to BBAHC, as documented in the agency's CSC "shortfall reports." The shortfall reports were (and are) prepared by the IHS in compliance with ISDEAA section 106(c), which requires that the agency submit to Congress an annual report on the implementation of the ISDEAA, including:

> **(1)** an accounting of the total amounts of funds provided for each program and the budget activity for direct program costs and contract support costs of tribal organizations under self-determination;
> **(2)** an accounting of any deficiency in funds needed to provide required contract support costs to all contractors for the fiscal year for which the report is being submitted....

25 U.S.C. § 450j-1(c). Each IHS Area Office, including the Alaska Area, prepares a shortfall report that shows how much, if at all, each tribe and tribal organization in the Area was underpaid in CSC for the fiscal year.

18. The form of the shortfall report has varied somewhat over the years, but the essential information reflected in the report that is used to calculate the shortfalls has remained the same: the IDC requirement (program base times negotiated IDC rate) plus the DCSC requirement equals the total CSC requirement; the total CSC requirement minus the total CSC paid by the IHS equals the CSC shortfall.

19. According to the shortfall reports, BBAHC suffered significant CSC shortfalls in FYs 1993-1999. The shortfalls documented in the reports for five of those years are summarized in the following table:

**Table 1. Shortfall Summary**

| FY | Total Requirement ($) | Total Paid ($) | Shortfall ($) |
|---|---|---|---|
| 1993 | 2,818,802 | 2,477,917 | 340,885 |
| 1994 | 4,941,844 | 2,848,960 | 2,092,884 |
| 1995 | 5,033,675 | 3,150,771 | 1,882,904 |
| 1996 | 5,102,767 | 2,882,517 | 2,220,250 |
| 1997 | 5,689,321 | 4,327,724 | 1,361,597 |

Although the shortfalls continued in FYs 1998 and 1999—*see* IHS FY 1998 shortfall report, column P (showing "Total CSC Shortfall" of $2,054,876 for BBAHC); IHS FY 1999 shortfall report, column S (showing "Total CSC Shortfall" of $1,569,035 for BBAHC)—BBAHC's claims for those years are based on the ISDEAA stable-funding requirement described below, so the full shortfall is not the relevant measure of damages.

The ISDEAA Stable-Funding Requirement and the Claims for FYs 1998 and 1999

20. Under the ISDEAA, the amount of CSC paid to BBAHC may not be reduced from year to year unless BBAHC's need for CSC in a subsequent year drops or one of five narrow exceptions applies. Section 106(b)(2) of the ISDEAA states that the amount of funds required by subsection (a), including CSC, "shall not be reduced by the Secretary in subsequent years except pursuant to –

> (A) a reduction in appropriations from the previous fiscal year for the program or function to be contracted;
> (B) a directive in the statement of the managers accompanying a conference report on an appropriation bill or continuing resolution;
> (C) a tribal authorization;
> (D) a change in the amount of pass-through funds needed under a contract; or
> (E) completion of a contracted project activity or program[.]"

25 U.S.C. 450j-1(b)(2).

21. The ATHC incorporates this stable-funding provision and conditions, as do BBAHC's AFAs. ATHC Art. II, § 12(a) ("future funding of the Co-Signer's successor Annual Funding Agreements shall only be reduced pursuant to the provisions of § 106(b) of the [ISDEAA]," subject to adjustments in accordance with reallocation decisions of the Co-Signers); FY 1998 AFA § 4(a) (funding amounts "subject to reductions only in accordance with Section 106 of [the ISDEAA] during the term of this Annual Funding Agreement or thereafter"); FY 1999 AFA § 4(a) (same).[4]

22. The IHS's failure to pay the proper amount of CSC in FY 1997 hurt BBAHC not only in that year but in subsequent ones. Had the IHS paid the full amount in FY 1997, as it was required to do under section 106 of the ISDEAA and *Cherokee Nation*, the IHS would have been required to pay, and in fact would have paid, at least that same amount in FYs 1998 and 1999 under the stable-funding provisions in section 106(b) of the ISDEAA, Article II, § 12(a) of the Compact, section 4(a) of the AFAs, and IHS Circular No. 96-04, provided that amount did not exceed BBAHC's total need during those years, which it did not.

23. Appropriations designated for CSC increased in both FY 1998 and FY 1999.[5] As a result, appropriations were not reduced in a way to permit IHS to invoke the section 106(b)(2)(A) exception to the stable-funding rule. Nor did any other 106(b) exception apply in

---

[4] IHS Circular 96-04 also incorporates the statutory stable-funding requirement and conditions. In relevant part, the Circular provides that, "Prior year funds provided for indirect CSC to each awardee, if justified in subsequent years, shall not be reduced by the IHS, except as authorized in section 106(b) of the [ISDEAA]." IHS Circular 96-04 § 4.A(4)c.

[5] *See* Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543, 1582-83 (1997) (appropriating $168,702,000 for CSC for ongoing contracts in FY 1998, a $7.98 million increase over FY 1997); Omnibus Consolidated and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, 112 Stat. 2681, 2681-279 (1998) (appropriating $203,781,000 for FY 1999, a $35 million increase).

those years. The ISDEAA, BBAHC's contracts, and Circular 96-04 make clear that CSC funds "shall not be reduced" from year to year unless one of those five narrow exceptions applies.

24. This stable-funding rule applied notwithstanding the purported "caps" on CSC spending that Congress included in the appropriations bills for FY 1998 and 1999.[6] These purported CSC "caps" have led FY 1998 and thereafter to become known as "cap years," as opposed to the "lump-sum years" of FY 1997 and before at issue in *Cherokee Nation*.

25. Based on its conclusion that IHS should have paid it the proper amount of CSC, BBAHC presented claims for its unpaid CSC for FYs 1995-1999 in letters to the IHS dated July 5, 2005, and for FYs 1993 and 1994 in letters dated November 30, 2006. The IHS has denied the claims for FY 1995 and 1996, and failed to decide the others within a reasonable time. Therefore all the claims are properly before this Court. *See* 41 U.S.C. § 609(a).

**FIRST CLAIM FOR RELIEF**

**Breach of Contract – Shortfall Claims**

26. All prior allegations are adopted by reference.

27. In *Cherokee Nation*, the Supreme Court held that the IHS should have reprogrammed funds from its unrestricted lump-sum appropriation to pay tribal contractors the full CSC due under their contracts. The IHS paid BBAHC less than its full CSC requirement in FYs 1993-1997, as acknowledged in the IHS shortfall reports. In doing so, the IHS violated the ISDEAA's requirement of full payment from available appropriations, as affirmed by the Supreme Court in *Cherokee Nation*, and breached its agreements with BBAHC, which

---

[6] *E.g.*, Dep't of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543, 1582-83 (1997) (providing that, in FY 1998, "not to exceed $168,702,000 shall be for payments to tribes and tribal organizations for contract support costs associated with ongoing contracts or grants or compacts").

incorporate the full-funding requirement of section 106. BBAHC's claims for the "lump-sum" years, FYs 1993-1997, are the same as those at issue in *Cherokee Nation*.

Claim 1: FY 1993

28. As indicated in the IHS's own shortfall report, BBAHC's CSC requirement for FY 1993 was $2,818,802, yet the IHS paid far less, $2,477,917. Therefore, BBAHC asserts a shortfall claim under the ISDEAA and the FY 1993 contract in the amount of **$340,885**.

Claim 2: FY 1994

29. As indicated in the IHS's own shortfall report, BBAHC's CSC requirement for FY 1994 was $4,941,844, yet the IHS paid far less, $2,848,960. Therefore, BBAHC asserts a shortfall claim under the ISDEAA and the FY 1994 contract in the amount of **$2,092,884**.

Claim 3: FY 1995

30. As indicated in the IHS's own shortfall report, BBAHC's CSC requirement for FY 1995 was $5,033,675, yet the IHS paid far less, $3,150,771. Therefore, BBAHC asserts a shortfall claim under the ISDEAA, the ATHC and the FY 1995 AFA in the amount of **$1,882,904**.

Claim 4: FY 1996

31. As indicated in the IHS's own shortfall report, BBAHC's CSC requirement for FY 1996 was $5,102,767, yet the IHS paid far less, $2,882,517. Therefore, BBAHC asserts a shortfall claim under the ISDEAA, the ATHC and the FY 1996 AFA in the amount of **$2,220,250**.

Claim 5: FY 1997

32. As indicated in the IHS's own shortfall report, BBAHC's CSC requirement for FY 1997 was $5,689,321, yet the IHS paid far less, $4,327,724. Therefore, BBAHC asserts a

shortfall claim under the ISDEAA, the ATHC and the FY 1997 AFA in the amount of **$1,361,597**.

## SECOND CLAIM FOR RELIEF

**Breach of Contract - Stable Funding**

33. All prior allegations are adopted by reference.

34. For FYs 1998 and 1999, BBAHC does not seek to recover the full documented shortfall for each year, only that amount that the IHS was required to pay in those years (but did not) based on the statutory and contractual stable-funding provisions described above. This theory of recovery was referred to in the requests for a contracting officer's decision as the "contract theory."

35. Had BBAHC been paid properly in the lump-sum years, it would have increased BBAHC's recurring prior year direct and indirect CSC base, which would have been paid in subsequent years. BBAHC's claims for FYs 1998 and 1999 are based on the ISDEAA stable-funding requirement under section 106(b), incorporated into the ATHC, the AFAs, and IHS Circular 96-04: The agency may not reduce funding from prior years except in specific narrow circumstances that did not exist in this case.

36. The damages described in the next two paragraphs resulted from the IHS's violations of the ISDEAA and breach of the FY 1998 and FY 1999 agreements. In the alternative, the amounts claimed in the next two paragraphs are consequential damages resulting from the IHS's violation of the statute and breach of the FY 1997 agreements in failing to pay 100% of the CSC requirement in that year, which amount would have recurred in succeeding years but for that breach.

Claim 6: FY 1998

37. Had the IHS complied with the rule of *Cherokee Nation* and paid BBAHC the proper amount in FY 1997, $5,689,321, the IHS would have been legally obligated to pay at least that much in FY 1998. But in FY 1998, the IHS paid only $4,751,670. IHS FY 1998 shortfall report, column O. Therefore, BBAHC asserts a claim under the ISDEAA and section 4 of the FY 1998 AFA for **$937,651**.

Claim 7: FY 1999

38. Similarly, had the IHS complied with the rule of *Cherokee Nation* and paid BBAHC the proper amount in FY 1997, $5,689,321, the IHS would have been legally obligated to pay at least that much in FY 1999. But in FY 1999, the IHS paid only $5,392,916. IHS FY 1999 shortfall report, column R. Therefore, BBAHC asserts a claim under the ISDEAA and section 4 of the FY 1999 AFA for **$296,405**.

## PRAYER FOR RELIEF

39. BBAHC therefore requests the following relief:

A. That this Court award BBAHC **$9,132,576** in damages for unpaid CSC, as summarized in the following table, and such other damages as may be proven in this action;

**Table 2. Claim Summary**

| Claim # | FY | Claim Amount ($) |
|---|---|---|
| 1 | 1993 | 340,885 |
| 2 | 1994 | 2,092,884 |
| 3 | 1995 | 1,882,904 |
| 4 | 1996 | 2,220,250 |
| 5 | 1997 | 1,361,597 |
| 6 | 1998 | 937,651 |
| 7 | 1999 | 296,405 |
| **TOTAL ($)** | | **9,132,576** |

B. That this Court order the payment of interest on these claims pursuant to the CDA, 41 U.S.C. § 611, and the Prompt Payment Act, Chapter 39 of Title 31 United States Code;

C. That this Court award BBAHC its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 450m-1(c), and other applicable law; and

D. That this Court award BBAHC such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Geoffrey D. Strommer, Attorney of Record
Stephen D. Osborne, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (fax)

Lisa F. Ryan, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Attorneys for the Bristol Bay Area Health Corporation

DATED: October 12, 2007.