# EXHIBIT A

# ALASKA TRIBAL HEALTH COMPACT

BETWEEN

CERTAIN ALASKA NATIVE TRIBES

AND THE

UNITED STATES OF AMERICA

OCTOBER 1, 1994

—

AMENDED AND RESTATED

OCTOBER 1, 1996

FY97

UNITED STATES OF AMERICA
SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN SERVICES

BY: ______________________
for DIRECTOR, INDIAN HEALTH SERVICE

DATE: 7 · 17 · 96

BRISTOL BAY AREA HEALTH CORPORATION
on Behalf of Itself and Certain Alaska Native Tribes, Identified in Exhibit A

BY: H. Sally Smith
H. Sally Smith
President

DATE: 6/6/96

BY: ______________________
Robert J. Clark
Chief Executive Officer

DATE: 6/6/96

RECEIVED
JUN 10 1996
Regional Health Contract Health Co.

# ANNUAL FUNDING AGREEMENT
# BETWEEN
# CERTAIN ALASKA NATIVE TRIBES IN THE BRISTOL BAY AREA REGION
# AND
# THE SECRETARY OF HEALTH AND HUMAN SERVICES
# OCTOBER 1, 1996

*This Annual Funding Agreement is entered into by and between certain Alaska tribes in the Bristol Bay region as identified on the signature page herein and the Secretary of the Department of Health and Human Services. These tribes have authorized the Bristol Bay Area Health Corporation to sign this Annual Funding Agreement for them and to be responsible for and carrying out the terms of this Annual Funding Agreement.*

**Section 1 - Obligations of the IHS.** This Annual Funding Agreement ("Agreement") obligates the Indian Health Service to provide funding and services identified herein and as provided in the Alaska Tribal Health Compact ("Compact") between the Bristol Bay Area Health Corporation (BBAHC) and certain other Co-Signers thereof and the United States in Fiscal Year 1997.

A Memorandum of Understanding regarding Continuing Services Plan Transition will be executed on or before September 30, 1996 among the Co-Signers and the IHS Area Office to reflect the understanding of the parties regarding transition of services.

In addition, although funds are provided from Headquarters and Area Office in support of this Compact, the Indian Health Service will agree to continue to make available to this Co-Signer services, activities, functions and programs from both Area Office and Headquarters unless 100% of the total tribal shares for these services, activities, functions and programs have been specifically included in this Agreement. In cases where a portion of a tribal share is provided there may be some diminishment of the level of services, activities, functions and programs provided by IHS. Furthermore, the Indian Health Service will reorganize both Headquarters and the Area Office to continue to provide the remaining functions which have not been included in this Agreement in the most effective and efficient manner possible, provided that decisions about the array and level of services, activities, functions and programs to be offered by the Indian Health Service shall be made in consultation with Alaska Tribes. The Indian Health Service programs, services, functions, and activities not negotiated into or listed in Appendices A and B will be the responsibility of the Indian Health Service.

UNITED STATES OF AMERICA
SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN SERVICES

BY: ____________________
for DIRECTOR, INDIAN HEALTH SERVICE

DATE: 7·17·96

BRISTOL BAY AREA HEALTH CORPORATION
ON BEHALF OF ITSELF AND
CERTAIN ALASKA NATIVE TRIBES, IDENTIFIED
IN EXHIBIT A OF THE COMPACT

BY: H. Sally Smith.
H. SALLY SMITH
PRESIDENT

DATE: 6/6/96.

BY: ____________________
ROBERT J. CLARK
CHIEF EXECUTIVE OFFICER

DATE: 6/6/96

# ALASKA TRIBAL HEALTH COMPACT

BETWEEN

CERTAIN ALASKA NATIVE TRIBES

AND THE

UNITED STATES OF AMERICA

OCTOBER 1, 1994

—

AMENDED AND RESTATED

OCTOBER 1, 1997

FY 98



UNITED STATES OF AMERICA
SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN SERVICES

BY: [signature] for
DIRECTOR, INDIAN HEALTH SERVICE

DATE: AUG 26 1997

BRISTOL BAY AREA HEALTH CORPORATION
On Behalf of Itself and Certain Alaska Native Tribes, Identified in Exhibit A.

BY: H. Sally Smith
H. SALLY SMITH
CHAIRMAN

DATE: 6/9/97

BY: Robert J. Clark
ROBERT J. CLARK
CHIEF EXECUTIVE OFFICER

DATE: 6/9/97

ANNUAL FUNDING AGREEMENT
BETWEEN
CERTAIN ALASKA NATIVE TRIBES IN THE
BRISTOL BAY AREA REGION
AND
THE SECRETARY OF HEALTH AND HUMAN SERVICES
OCTOBER 1, 1997

*This Annual Funding Agreement is entered into by and between certain Alaska tribes in the Bristol Bay region as identified on the signature page herein and the Secretary of the Department of Health and Human Services. These tribes have authorized the Bristol Bay Area Health Corporation to sign this Annual Funding Agreement for them and to be responsible for and carrying out the terms of this Annual Funding Agreement.*

**Section 1 - Obligations of the IHS.** This Annual Funding Agreement ("Agreement") obligates the Indian Health Service to provide funding and services identified herein and as provided in the Alaska Tribal Health Compact ("Compact") between the Bristol Bay Area Health Corporation (BBAHC) and certain other Co-Signers thereof and the United States in Fiscal Year 1998.

A "Memorandum of Understanding regarding Continuing Services Plan for the Area Office of the Alaska Native Health Service for FY98" among the Co-Signers and the Alaska Area Native Health Service to reflect the understanding of the parties regarding services, attached as Appendix E, is hereby incorporated by reference.

In addition, although funds are provided from Headquarters and Area Office in support of this Compact, the Indian Health Service will agree to continue to make available to this Co-Signer services, activities, functions and programs from both Area Office and Headquarters unless 100% of the total tribal shares for these services, activities, functions and programs have been specifically included in this Agreement. In cases where a portion of a tribal share is provided there may be some diminishment of the level of services, activities, functions and programs provided by IHS. Furthermore, the Indian Health Service will reorganize both Headquarters and the Area Office to continue to provide the remaining functions which have not been included in this Agreement in the most effective and efficient manner possible, provided that decisions about the array and level of services, activities, functions and programs to be offered by the Indian Health Service shall be made in consultation with Alaska Tribes. The Indian Health Service programs, services, functions, and activities not negotiated into this agreement or listed in Appendix A will be the responsibility of the Indian Health Service.

UNITED STATES OF AMERICA
SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN SERVICES

BY: [signature]
DIRECTOR, INDIAN HEALTH SERVICE

DATE: AUG 11 1997

BRISTOL BAY AREA HEALTH CORPORATION
ON BEHALF OF ITSELF AND
CERTAIN ALASKA NATIVE TRIBES, IDENTIFIED
IN EXHIBIT A OF THE COMPACT

BY: [signature]
H. SALLY SMITH
PRESIDENT

DATE: 6/9/97

BY: [signature]
ROBERT J. CLARK
CHIEF EXECUTIVE OFFICER

DATE: 6/9/97

1

# ANNUAL FUNDING AGREEMENT BETWEEN CERTAIN ALASKA NATIVE TRIBES IN THE BRISTOL BAY AREA REGION AND THE SECRETARY OF HEALTH AND HUMAN SERVICES October 1, 1994

This Annual Funding Agreement is entered into by and between certain Alaska tribes in the Bristol Bay region as identified on the signature page herein. These tribes have authorized the Bristol Bay Area Health Corporation to sign this Annual Funding Agreement for them and to be responsible for and carrying out the terms of this Annual Funding Agreement.

**Section 1 - Obligations of the IHS.** This Annual Funding Agreement ("Agreement") obligates the Indian Health Service to provide funding and services identified herein and as provided in the Alaska Tribal Health Compact ("Compact") between the Bristol Bay Area Health Corporation and certain other Co-Signers thereof and the United States in Fiscal Year 1995.

In addition, although funds are provided from Headquarters and Area Office in support of this compact, the Indian Health Service will agree to continue to make available to this Co-Signer services from both Area Office and Headquarters unless the funding for these services and functions have been specifically included in this Agreement. Furthermore, Indian Health Service may reorganize both Headquarters and the Area Office to continue to provide the remaining functions which have not been included in this Agreement in the most effective and efficient manner possible. The Indian Health Service programs, services, functions, and activities, not negotiated into or listed in Attachment 1 are presumed to be the responsibility of the Indian Health Service.

The Alaska Native Medical Center (ANMC) will continue, subject to appropriations available, to provide the services and functions which have historically been provided to Bristol Bay Area Health Corporation when operating under a Title I P.L. 93-638 contract. This is to include accepting all referrals of Alaska Natives from the Kanakanak Hospital; providing specialty care field clinics, consultation to Bristol Bay Area Health Corporation physicians, pathology, radiology, and laboratory

death and disability from injuries.

11. Audiology provides full scope of audiology services.

12. Haemophilus Influenzae type B(HIB) vaccination program

13. Infant Learning Program Identifies and provides services for children from 0-3 who are experiencing developmental difficulties

C. Other programs/services funded on non-recurring basis

1. Tobacco Cessation Project
2. Baby Bottle Tooth Decay
3. Tobacco Intervention

D. Other programs/services funded

1. Any new health care program funded during FY95 including, but not limited to programs identified in the Indian Health Care Improvement Act.

2. Any new health care program resulting from the reallocation of funds and redesign of programs during FY95 which will be in accordance with the terms of the Compact.

b) The applicability of FTCA shall be pursuant to Article V, Section 3 of the Alaska Tribal Health Compact.

**Section 4 - Amounts available in Fiscal Year 1995.**

a) The following amounts are available to the Bristol Bay Area Health Corporation pursuant to the Compact and Title III of the Indian Self Determination and Education Assistance Act, as amended, and are subject to reductions only in accordance with Section 106 of that Act during the term of this Annual Funding Agreement.

1. Recurring base: $15,217,160 (thru modification #71, FY 94)
2. Non-recurring funds: $540,278 (thru modification #71, FY 94)

150

3. Alaska Area Tribal Shares (subject to Annual Intertribal reallocation): $343,714
4. Special Funds: (Program formula pending August negotiations)
5. IHS Headquarters Tribal Shares: headquarters active user pool $284,728

These amounts are subject to additions for new funds received during the term of this Agreement.

b) Subject to Congressional appropriation, an additional lump sum amount shall be added to this Agreement for the Bristol Bay Area Health Corporation under ISDM 92-2 or its successor. The amount shall be based upon the Bristol Bay Area Health Corporation's indirect cost agreement and applicable law and will be added to this Agreement as soon as available through appropriations, indirect costs shall be negotiated for this Annual Funding Agreement in compliance with Section 106 (d)(1) and 106(e) of the Indian Self-Determination and Education Act, as amended.

1. Indirect/contract support funds: $590,428

(c) An additional lump sum of funds in an amount to be negotiated pursuant to Article 5, Section 12 may be provided to the Bristol Bay Area Health Corporation by the Indian Health Service to assist in defraying startup costs. (pending negotiations)

1. Startup funds: (pending August, 1994 negotiations)

(d) We agree that the amount reflected in the Annual Funding Agreement is a portion of the full tribal share for the Area as negotiated. We agree to continue negotiations to define the maximum amount available to fund this Annual Funding Agreement in FY95.

(e) We agree that the amount reflected in this Annual Funding Agreement for the Indian Health Service (IHS) Headquarters tribal share is a portion of the full tribal share. It does not reflect any amount based on program formula calculation or the final user population. We agree to continue negotiations to define the appropriate methodology to determine the maximum amount available to fund this Annual Funding Agreement in FY95.

**Section 5 - Method of Payment.** As allowed by federal apportionment

101

# ADDENDUM TO ANNUAL FUNDING AGREEMENT BETWEEN CERTAIN ALASKA NATIVE TRIBES SERVED BY THE BRISTOL BAY AREA HEALTH CORPORATION AND THE SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES

October 1, 1994

This Addendum is intended to amend the Annual Funding Agreement which was entered into by and between certain Alaska Tribes in the Bristol Bay region and the Secretary of the Department of Health and Human Services on June 22, 1994. These Tribes have authorized the Bristol Bay Area Health Corporation to sign the Annual Funding Agreement to be responsible for carrying out the terms of this Agreement.

The following provisions of the Annual Funding Agreement shall be amended as follows:

<u>Section 1</u> -

1) The second paragraph of Section 1 shall be replaced with the following paragraph:

In addition, although funds are provided from Headquarters and Area Office in support of this Compact, the Indian Health Service will agree to continue to make available to this Co-Signer services, activities, functions and programs from both Area Office and Headquarters unless 100% of the total tribal shares for these services, activities, functions and programs have been specifically included in this Agreement. In cases where a portion of a tribal share is provided there may be some diminishment of the level of services, activities, functions and programs provided by IHS. Furthermore, the Indian Health Service may reorganize both Headquarters and the Area Office to continue to provide the remaining functions which have not been included in this Agreement in the most effective and efficient manner possible, provided that decisions about the array and level of services, activities, functions and programs to be offered by the Indian Health Service shall be made in consultation with Alaska Tribes. The Indian Health Service programs, services, functions, and activities not negotiated into or listed in Appendix A are presumed to be the responsibility of the Indian Health Service.

2) The following provision shall replace the provision presently set forth in Section 4(b):

(b) Indirect/Contract Support amounts shall be included in this Agreement, subject to Congressional appropriation under ISDM 92-2 or its successor. The amount shall be based upon Bristol Bay Area Health Corporation's indirect cost agreement and applicable law and shall be added to this Agreement as soon as available through appropriations. Indirect costs shall be negotiated for this Annual Funding Agreement in compliance with section 106(d)(1) and 106(e) of the Indian Self-Determination and Education Assistance Act, as amended. The Indirect/Contract Support amount shall be : $ 787,396.[4]

3) The following provision shall be substituted for the provision presently set forth in Section 4(c):

(c) An additional lump sum of funds in an amount to be negotiated pursuant to Article V, Section 12 of the Alaska Tribal Health Compact and in accordance with procedures in ISDM 92-2 may be provided to the Bristol Bay Area Health Corporation by the Indian Health Service to assist in defraying startup costs. The Bristol Bay Area Health Corporation has estimated its start-up costs as: $350,000.

4) The following provision shall replace Section 4(d):

(d) The funds from Headquarters provided under this Agreement have been negotiated using the same residual and categorical line-item assumptions utilized in FY 94. The parties have agreed to review the determination of Headquarters residual resources and agree that the funds provided based upon residual may change in FY 96.

5) Section 4(e) shall be replaced with the following provision:

(e) The amounts available from Area for tribal shares reflect the transition plan agreed upon by the parties and does not reflect the full amount that will be available in future years.

---

methodology. The total Alaska Area tribal share was then reallocated to each Co-Signer according to the agreed upon Alaska Area methodology, which is identified specifically for each line in Appendix A.

[4] This amount is made up of Indirect on B-PIG $52,000, Startup Costs $147,000, High Risk OB $15,330, Alaska Tribal Shares $216,002, and Headquarters Tribal Shares $357,064.

EXHIBIT C

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Public Health Service
Indian Health Service
Rockville, Maryland 20857

Refer to: OTA

# INDIAN SELF-DETERMINATION MEMORANDUM NO. 92-2

## CONTRACT SUPPORT COST POLICY

Sec.


1. Background
2. Purpose
3. Definitions
4. New and Expanded Contracts
5. Procedure for Computing Amount of Contract Support Costs
6. Ongoing Contracts
7. Subsequent Years Considerations
8. Supersession


## 1. BACKGROUND

The development of this policy is in response to section 106(a) of Public Law 93-638, as amended, the Indian Self-Determination Act, which states:

Section 106. (a)(1) "The amount of funds provided under the terms of self-determination contracts entered into pursuant to this Act shall not be less than the appropriate Secretary would have otherwise provided for the operation of the program or portions thereof for the period covered by the contract.

(2) There shall be added to the amount required by paragraph (1) contract support costs which shall consist of the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which -

(A) normally are not carried on by the respective Secretary in his direct operation of the program; or

(B) are provided by the Secretary in support of the contracted program from resources other than those under contract."

Distribution: PDS 557 Tab D, Tribes, Tribal Organizations

## 2. PURPOSE

To establish the Indian Health Service (IHS) policy for 1) identifying amounts required for direct and indirect contract support funds; and 2) allocating contract support funds for all Public Law (P.L.) 93-638 contracts. All funds for contract support costs are subject to the availability of funds made available for this purpose.

This policy outlines the procedures to be used to determine the need for contract support costs, and to guide the allocation of these funds.

## 3. DEFINITIONS

Contract Support Costs are:

A. Reasonable costs for activities which must be carried on by the Indian tribe or tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management but which normally are not carried on by the Secretary in his direct operation of the program, or are provided by the Secretary in support of the program from resources other than those under contract; and

B. Costs which are reasonable, necessary and allowable costs of the contractor, which are allocable to the contract based on applicable Federal cost principles; and

C. Costs which are not provided for under the allocation of program funds available for the contract as defined in P.L. 93-638, as amended, Section 106 (a)(1); and

D. Treated as either direct or indirect by the contractor based on applicable cost principles and the contractor's cost allocation policy.

## 4. NEW AND EXPANDED CONTRACTS

A. The Indian Self-Determination (ISD) Fund will cover certain costs of P.L. 93-638 awards when the award is:

(1) an initial transfer of a program previously operated by the IHS to the tribe or tribal organization, or

(2) to expand current tribal operations through the assumption of additional programs previously operated by IHS, or

(3) to provide initial contract support funding for all new and expanded 638 contracts, including the assumption of programs previously operated by other tribes, tribal organizations, Indian contractors, and for newly recognized tribes.

B. IHS will award funds for contract support costs for new and expanded contracts in the following two categories:

(1) Direct Contract Support Costs:

a. Non-recurring direct contract support costs are costs which are of a non-recurring nature, are otherwise allowable direct contract support costs, and are required for the program to begin operations. These are also referred to as start up costs, but are not intended to be an additional cost category.

b. Recurring direct contract support costs are costs which are of a recurring nature and associated directly with the operation of the program. These funds shall be awarded on a recurring basis.

(2) Indirect or Indirect Types of Costs:

Costs incurred for a common or joint purpose benefitting more than one contract objective, or which are not readily assignable to the contract objectives specifically benefitted without effort disproportionate to the results achieved, and which are not funded by other direct costs, and are incorporated in the Indian tribe's or tribal organization's indirect costs reimbursement procedure as negotiated annually with the cognizant Federal agency.

For contractors without negotiated indirect cost rates, indirect-type costs consist of costs which are normally found in indirect cost pools of contractors with rates, and which are negotiated between the contractor and the Area Office using principles of reasonableness, allowability and allocability (see attachment A).

These funds shall be awarded "non-recurring" subject to negotiation in each subsequent year. Those contractors with a surplus of indirect cost support funds will not be allocated additional funds until the need is indicated by the most current negotiated indirect cost rate. (See page 7, Section 6, for special procedures for contracts that have received indirect cost funds as recurring funds). The following illustrations show: 1) total funding for the first year of the contract, and 2) contract costs for subsequent years.

Total funding for first year of the contract



Contract Costs for Subsequent Years




(3) In subsequent years, direct contract support funds will be considered part of the recurring base of the contract, and will receive mandatory cost increases as do the direct program funds. Amount of indirect contract support funds must be justified each year based on negotiated amounts and any shortfalls are reported to IHS Headquarters for inclusion in the Annual Report to Congress on implementation of P.L. 93-638.

C. (1) Funds for new and expanded contracts will be allocated by IHS Headquarters from the ISD fund on a monthly basis until expended. If permitted by appropriations act, any funds that remain at the end of the fiscal year will be added to any ISD Funds available in the subsequent year. If funds are exhausted at any point in the fiscal year, requests received thereafter will be considered first for funding in the subsequent year from funds appropriated for this purpose.

(2) Area Offices will make requests after receiving proposals for new and expanded contracts. Areas are encouraged to begin discussions with the proposing tribe or tribal organization early to identify the amount of <u>need</u> for contract support costs according to procedures detailed in Section 5 of this policy.

Once the amount of need has been identified, and before the end of the 60-day proposal review period, a request for this amount will be submitted to the IHS Office of Tribal Activities, Division of Self-Determination Services to determine if funds are available for this purpose. The Office of Tribal Activities will respond immediately to advise if the funds are available.

While a CSC need may be requested which is greater than the amount determined to be available, the available amount will be the basis for consideration of approval or declination of proposals, and any subsequent award. Deficiencies for existing contracts will be included in the annual report to Congress required by Section 106(c) ot the Act.

(3) The requested amount will be the total of indirect and direct contract support costs for each project.

(4) If funds from the ISD Fund are inadequate to fully fund all requests, then requests to be funded that month will be selected based on the earliest receipt date.

## 5. PROCEDURE FOR COMPUTING AMOUNT OF CONTRACT SUPPORT COSTS

A. Direct Contract Support Costs

For new and expanded contracts, Area Offices will identify the amount needed for direct contract support costs in accordance with the following:

A detailed budget will be prepared for first-time contractors (new and expanded) detailing amounts to be considered as direct program funds, indirect and indirect type contract support costs, and direct contract support costs.

The amount of recurring direct contract support costs will be determined by negotiation between the recipient and the Area Office (see definitions section for direct contract support costs). **Only categories of cost, which are not contained in either the indirect cost pool or the amount computed pursuant to Section 106(a)(1) can be considered as direct contract support costs.** The Area Offices and recipients must agree on the amount of direct contract support costs which will be recurring in future years.

"Recurring" direct contract support costs which may not be in a contractor's indirect cost pool are:

- Unemployment tax on direct program salaries.
- Workers compensation insurance on direct program salaries.
- Cost of retirement and other fringe benefits for direct program personnel in excess of amount funded within P.L. 93-638, as amended, Section 106 (a)(1).
- Long distance telephone charges.
- Postage allocable to direct programs.
- Discipline specific training for direct program personnel not funded in the 106 (a)(1) amount.

The Area Office will also work with the contractor to identify non-recurring direct contract support costs necessary as one time start up costs. These must be required to begin operations. They are not intended to be a program enhancement, and cannot be items of cost included in the 106(a)(1) amount. Examples may include the following:

·Purchase of computer hardware and software.
·Required training and staff development.
·Systems development.
·Equipment and furniture.

Items listed above as examples of recurring and non-recurring direct contract support costs must be justified as such and negotiated with the Area Office. Items not included as examples above, but requested and justified by contractors shall be submitted by the Area Office to IHS Headquarters, Division of Self-Determination Services, for approval. This will contribute to greater consistency from Area to Area.

A single item of cost to be funded shall not be accounted for both in the computation of direct costs, and also in the computation of indirect or indirect-type costs. However, a type of cost may be either direct or indirect depending on the level or function of the organization to which it applies. The Area Office shall ensure that costs are reasonable, necessary, and not duplicative.

To the extent that the Area Office and the contractor cannot agree on an item(s) of cost, the disputed items shall be submitted to the Director, IHS, through the IHS Office of Tribal Activities, Division of Self-Determination Services.

The following is a description of the methodology to be used in computing the amount required for indirect contract support costs.

B. Indirect or Indirect Type Costs

For all contractors, Area Offices will identify the amount required for indirect costs of awards (12 months of operation) for each contract as follows:

(1) Recipients with Established Indirect Cost Rates

The amount of indirect costs expected to be incurred under awards by recipients with rates which have been negotiated or are being negotiated with the cognizant Federal agency will be determined by applying the negotiated rate(s) to the direct cost base amount for this purpose.

(2) Recipients without Established Indirect Cost Rates

Indirect types of costs may be computed by negotiating amounts for the following examples of "indirect-types of costs" listed on the following page. These examples are those most commonly found in the indirect cost pools of recipients with rates. The total amount negotiated for these items will be considered as the recipient's indirect cost for purposes of this allocation procedure.

| Management and Administration | Facilities and Equipment | General Services and Expenses |
| --- | --- | --- |
| Governing Body | Building Rent/Lease/Cost Recovery | Insurance and Bonding |
| Management and Planning | Utilities | Legal Services |
| Financial Management | Housekeeping/Janitorial | Audit |
| Personnel Managemen | Building and Grounds | General Support Services |
| Procurement/Material Management | Repairs and Maintenance | |
| Human Resources Management | Equipment | |
| Property Management | | |
| Records Management | | |
| Data Processing | | |
| Office Services | | |

**Guidelines for the Principles Involved in Negotiating Indirect Costs**

A plan for allocation of indirect costs will be required to support the distribution of any indirect costs related to the contracted program. All indirect costs included in the plan will be supported by accounting records which will substantiate the propriety of the indirect costs. The allocation plan should cover all indirect costs of the contractor, and contain, but not necessarily be limited to 1) the nature and extent of services provided and their relevance to the contracted program, 2) the items of expense to be included in the indirect cost pool, and 3) the methods to be used in distributing cost.

The Office of Management and Budget (OMB), Circular No. A-87, Cost Principles for State and Local Governments, establishes principles and standards for determining indirect costs applicable to contractors (local governments and federally recognized Indian tribal governments). Further, the circular discusses allowable and unallowable indirect costs.

6. <u>ONGOING CONTRACTS</u>

The amount of indirect contract support funds representing the previous year's base will be distributed to Areas "recurring" to fund each Area's indirect cost need. Each contractor's need for indirect contract support shall be determined by calculating changes, if any, in indirect cost rates, bases, and pools. If funds available in the Area's indirect cost base are not adequate to meet total requirements, then the amount available shall be distributed according to each contractor's proportion of total need. <u>These funds will be awarded to the contractor as non-recurring funds.</u> (See 4.A(3)for treatment of direct contract support costs.)

Each year, Areas are required to report additional needs for indirect contract support funds beyond the amount provided in their previous year's recurring base, or any surplus of funds provided in their recurring base based on current year needs.

**Transition Period**

Some Areas have previously allocated indirect contract support funds as recurring funds to contractors. However, the purpose of this policy is to establish a uniform allocation process for indirect contract support funds, and will result in these funds being allocated as non-recurring funds to contractors Agency wide.

**It is not intended for Areas to reduce contract amounts of indirect contract support funds previously allocated as recurring funds without the approval of the contractor.** Those contractors with a surplus of indirect contract support funds will not be allocated additional indirect contract support funds until their most current negotiated indirect cost rate indicates an additional requirement for these funds. Mandatory increases for self-determination contracts should be provided only on the recurring base amount (excluding indirect contract support) since actual needs will be negotiated each year for the indirect cost amounts.

7. SUBSEQUENT YEARS CONSIDERATIONS

A. Areas shall maintain a historical record of funds awarded in each of the following categories:

a) direct program funds
b) direct contract support funds
c) indirect cost funding
d) indirect-type cost funding

B. Federal indirect cost negotiators should be requested to highlight changes, if any, in the contractor's annual cost allocation plan (treatment of items of cost) as an exhibit to the negotiated indirect cost agreement.

C. Contractors and Area Offices must re-negotiate the contractors indirect type cost budget annually if the contractor does not have a formal negotiated indirect cost rate.

D. The same cost allocation rules applying to those contractors with formally negotiated indirect cost agreements will be applicable to those contractors without formally negotiated indirect cost rates.

8. SUPERSESSION

This issuance supercedes any policies or instructions previously issued regarding the allocation of Contract Support Funds.

Everett R. Rhoades, M.D.
Assistant Surgeon General
Director

Distribution: PDS 557 Tab D, Tribes, Tribal Organizations

ATTACHMENT A

PRINCIPLES OF REASONABLENESS, ALLOWABILITY AND ALLOCABILITY

REASONABLE COSTS

A cost is reasonable if, in its nature or amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost. The question of the reasonableness of specific costs must be scrutinized with particular care in connection with contractors or separate programs thereof which receive the preponderance of their support from awards made by Federal agencies. In determining the reasonableness of a given cost, consideration shall be given to:

a. Whether the cost is of a type generally recognized as ordinary and necessary for the operation of the contractor or the performance of the contract.

b. The restraints or requirements imposed by such factors as generally accepted sound business practices, arms length bargaining, Federal and State laws and regulations, and terms and conditions of the contract.

c. Whether the individuals concerned acted with prudence in the circumstances, considering their responsibilities to the contractor, its members, employees, and clients, and the Government.

d. Significant deviations from the established practices of the contractor which may unjustifiably increase the contract costs.

ALLOCABLE COSTS

A cost is allocable to a particular cost objective in accordance with the relative benefits received. A cost is allocable to a contractor if it is treated consistently with other costs incurred for the same purpose in like circumstances and if it:

1) Is incurred specifically for the contract.

2) Benefits both the contract and other work and can be distributed in reasonable proportion to the benefits received.

3) Is necessary to the overall operation of the contract, although a direct relationship to any particular cost objective cannot be shown.

Any cost allocable to a particular contract or other cost objective under these principles may not be shifted to other Federal contracts to overcome funding deficiencies, or to avoid restrictions imposed by law or by the terms of the contract.

# EXHIBIT D

Parry Grover
Ted Wellman
DAVIS WRIGHT TREMAINE
550 W. 7th Ave., Suite 1450
Anchorage, Alaska 99501
(907) 257-5300

Local Counsel for Bristol Bay Area Health Corporation, and Southeast Alaska Regional Health Corporation

Douglas Pope
POPE & KATCHER
421 W. 1st Ave., Suite 220
Anchorage, Alaska 99501
(907) 272-8577

Local counsel for Maniilaq Association

Jerry C. Straus
Geoffrey D. Strommer
HOBBS, STRAUS, DEAN & WALKER
0225 SW Montgomery St., Ste. 10
Portland, Oregon 97201
(503) 242-1745

Counsel for Bristol Bay Area Health Corporation, Southeast Alaska Regional Health Corporation, and Maniilaq Association

FILED
JUL 07 1995
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By ______ Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

A95 258 CIV

BRISTOL BAY AREA HEALTH CORPORATION, an Alaska corporation; SOUTHEAST ALASKA REGIONAL HEALTH CORPORATION, an Alaska corporation; and MANIILAQ ASSOCIATION, an Alaska corporation;

Plaintiffs,

vs.

DONNA E. SHALALA, Secretary of Health and Human Services, and DR. MICHAEL TRUJILLO, Director of Indian Health Service, the DEPARTMENT OF HEALTH AND HUMAN SERVICES, and the INDIAN HEALTH SERVICE,

Defendants.

Case No. A95-__ (CIV) (___)

COMPLAINT

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX (907) 257-5399

67

DESCRIPTION OF ACTION

1. This is an action for breach of contract and to compel the Secretary of the Department of Health and Human Services (DHHS) and the Director of the Indian Health Service (IHS) to pay the Plaintiffs Bristol Bay Area Health Corporation (BBAHC), Southeast Alaska Regional Health Consortium[1] (SEARHC) and Maniilaq Association (Maniilaq) funds and interest on such funds which are due and owing under the terms of the Alaska Tribal Health Compact (Compact) and Annual Funding Agreements (AFAs) negotiated thereunder. The Plaintiffs and the Secretary of DHHS negotiated and signed the Compact and AFAs in June and September of 1994. In the Compact and AFAs the Plaintiffs agreed to assume certain responsibilities for the delivery of health care to Alaska Natives and American Indians located in their respective geographic areas and the Secretary agreed to transfer a sum certain to carry out those responsibilities to the Plaintiffs. The Plaintiffs have assumed all of the responsibilities set out in the Compact and AFAs, but the Secretary has failed to pay the amounts due and owing under the Compact and AFAs in accordance with the provisions of those agreements.

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

[1] In 1994, when the Alaska Tribal Health Compact was negotiated and signed, the Southeast Alaska Regional Health Consortium was called the Southeast Alaska Regional Health Corporation.

**PARTIES**

2. Plaintiff BBAHC is a non-profit Alaska corporation located in Dillingham, Alaska. BBAHC is a Tribal Organization under 25 U.S.C. § 450b(l) which is sanctioned by 32 federally-recognized Indian Tribes in the Bristol Bay and Calista regions to contract and/or compact with the DHHS to provide health care to Alaska Natives and American Indians located in those regions.

3. Plaintiff Maniilaq is a non-profit Alaska corporation located in Kotzebue, Alaska. Maniilaq is a Tribal Organization under 25 U.S.C. § 450b(l) which is sanctioned by 12 federally-recognized Indian Tribes in the Northwest Arctic Borough and Point Hope to contract and/or compact with the DHHS to provide health care services to Alaska Natives and American Indians located in the Borough and Point Hope.

4. Plaintiff SEARHC is a non-profit Alaska corporation located in Juneau, Alaska. SEARHC is a Tribal Organization under 25 U.S.C § 450b(1), which is sanctioned by 19 federally-recognized Indian Tribes in Southeast Alaska to contract and/or compact with the DHHS to provide health care to Alaska Natives and Indians located in the region.

5. Defendant Donna E. Shalala is the Secretary for the DHHS. Secretary Shalala is responsible for the overall administration of Title III of the Indian Self-Determination and Education and Assistance Act (Title III of the Act), the Tribal

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Self-Governance Demonstration Project Act. P.L. 100-472 as amended by P.L. 102-184 and P.L. 102-573.

6. Defendant Dr. Michael Trujillo is the Director of the IHS, a division of the DHHS. Dr. Trujillo is responsible for overseeing the implementation of Title III of the Act under the supervision and direction of Secretary Shalala.

7. Defendant DHHS is a department of the United States.

8. Defendant IHS is an agency within the DHHS which is responsible for overseeing the delivery of health care to eligible American Indians and Alaska Natives in the United States.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1361, 1362, and 2201, and as permitted by election by 25 U.S.C. § 450m-1 and Section 303(d) of Title III of the Act. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## CAUSE OF ACTION

### A. The Alaska Tribal Health Compact

10. The Indian Self-Determination and Education Assistance Act was enacted by Congress in 1975 and has since been amended on a number of occasions. Title I of the Act gives Indian Tribes and Tribal Organizations the right to contract with the Department of the Interior (Interior) and DHHS for the operation

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

of programs and services provided to American Indians and Alaska Natives by those Agencies. Under Title I, Interior and DHHS retain a significant amount of oversight and monitoring responsibilities over the programs and services included in Title I contracts.

11. The Tribal Self-Governance Demonstration Project was enacted by Congress in 1988 as Title III of the Act. The Project was designed to give Indian Tribes the option of entering into government-to-government agreements (compacts and annual funding agreements (AFAs)) with the Secretary of the Interior for the operation of Interior programs for American Indians and Alaska Natives. Participation in the Project offered a number of advantages over contracting under Title I of the Act, including: decreased oversight by the Bureau of Indian Affairs (BIA), the right to assume responsibilities for functions and activities at all levels of the BIA, the right to receive additional funds (commonly referred to as tribal shares) if a Tribe opts to assume additional responsibilities previously performed by the BIA, and the right to receive all funds identified in a compact or AFA in one lump sum payment at the beginning of the fiscal year. Under section 303(a)(9) of the Act, all compacts and AFAs are required to be submitted to Congress ninety days in advance of the proposed effective date of the agreements for review.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

12. In 1991 and 1992, Title III of the Act was amended by Congress. Among other things, the amendments directed DHHS to implement a Self-Governance Demonstration Project with selected Tribes and negotiate and enter into compacts and AFAs with such Tribes for the operation of IHS programs for Alaska Natives and American Indians.

13. On February 25, 1994, the Alaska Native Health Board (ANHB) submitted a proposal under Title III for an All-Alaska Self Governance Compact on behalf of a consortium of Alaska Tribes and Tribal Organizations. The proposal contemplated that there would be one compact in Alaska that all eligible Tribes in the state could sign (either directly or as members of an eligible Tribal Organization) if they chose to do so. Each compact co-signer would have a separate AFA that would spell out the details of the co-signer's relationship with the IHS. For example, the AFAs would identify the responsibilities that the co-signer would assume and provide for the transfer of funds from the IHS and to the co-signer to perform those responsibilities

14. On March 29, 1994, the IHS approved ANHB's proposal and on April 4, 1994, ANHB was informed of the approval. Shortly thereafter compact and AFA language negotiations began between potential co-signers and the IHS. Negotiations were completed on June 30, 1994, and the Alaska Tribal Health Compact (Compact) and AFAs were signed by the Director of the IHS and the first two co-

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

signers (BBAHC and Norton Sound Health Corporation) on that date and the appropriate documents were submitted to Congress in accordance with Title III. The Compact became effective for the first two co-signers on October 1, 1994. The Compact became effective for the balance of the co-signers (including SEARHC and Maniilaq) on January 1, 1995.

15. Article II, Section 3 of the Compact describes the funding amounts that are to be paid by the Secretary to all co-signers as follows:

> Section 3 -- Funding Amount. Subject only to the appropriations of funds by the Congress of the United States and to adjustments pursuant to § 106(b) of the Indian Self-Determination and Education Assistance Act, as amended, the Secretary shall provide [each co-signer] the total amounts specified in the Annual Funding Agreements.

Congress appropriated funds by means of a general appropriation sufficient to fund the Alaska Tribal Health Compact and other compacts negotiated under Title III of the Act for the 1995 fiscal year on September 30, 1994. <u>See</u> P.L. 103-332.

16. Article II, Section 4(a) of the Compact authorizes all Compact co-signers to elect how they wish to be paid and it describes when such payments are to be made by the Secretary:

> (a) Payment Schedule. Payment shall be made as expeditiously as possible and shall include financial arrangements to cover funding during periods under continuing resolutions to the extent permitted by such resolutions. For each fiscal year covered by the Compact, the Secretary shall make

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

NARA Seattle ∅009

> available the funds specified for that fiscal year under the Annual Funding Agreements by paying the respective total amount as provided for in each Annual Funding Agreement in advance lump sum, as permitted by law, or such other payments as provided in the schedule set forth in each Annual Funding Agreement. The first payment shall be made on or before ten calendar days after the date on which the Office of Management and Budget apportions the appropriations for that fiscal year for the programs, activities, functions and services subject to the Compact.

OMB apportioned the 1995 fiscal year appropriations for distribution on November 14, 1994.

17. Article II, Section 4(b) of the Compact explains how interest earned on funds paid by the IHS to Compact co-signers may be used:

> (b) Interest on Advances. Co-signers receiving funds under applicable Annual funding Agreements pursuant to this Compact shall be permitted to retain interest earned on funds advanced pending disbursement as authorized by law. Interest earned on advances shall not diminish the amount of funds the co-signer is authorized to receive under its Annual Funding Agreement in the year earned or in any subsequent fiscal year.

18. Article II, Section 10 of the Compact addresses how disputes between the parties are to be resolved. The provision incorporates the dispute resolution mechanisms available to Title I contractors under 25 U.S.C. § 450m-1(d), which includes the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 et seq. (CDA).

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue • Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 • Fax: (907) 257-5399



74

Section 611 of the CDA provides that:

> Interest on amounts found due to contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public law 92-41 (85 Stat. 97) for the Renegotiation Board.

U.S.C. § 611.

B. Bristol Bay Area Health Corporation

19. BBAHC was a member of the consortium on behalf of whom ANHB submitted the all-Alaska compact proposal to the IHS. BBAHC participated in the negotiations with IHS and signed the Compact on behalf of the 32 federally-recognized Tribes in the Bristol Bay and Calista regions on June 30, 1994. The Compact was submitted to Congress on June 30, 1994 and became effective for BBAHC on October 1, 1994.

20. BBAHC negotiated and entered into an AFA with the Director of the IHS on June 30, 1994. The AFA was submitted to Congress on June 30, 1994 and became effective for BBAHC on October 1, 1994. The AFA transfers specific responsibilities and funds to carry out those responsibilities from the IHS to BBAHC for the delivery of health care to Alaska Natives and American Indians in the Bristol Bay and Calista regions.

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

21. On September 29, 1994 BBAHC negotiated and signed an Addendum to the AFA.

22. BBAHC elected to have funds due under its AFA and Addendum paid in one annual lump sum payment. Section 5(a) of the Addendum provides that, with the exception of certain specifically identified amounts, all funds identified in Section 4 of the Addendum shall be paid in accordance with Article II, Section 4(a) of the Compact in one annual lump sum payment to be made by check or wire transfer.

23. Section 4 of BBAHC's Addendum identifies the amount of funds that the IHS is obligated to pay BBAHC. Section 4(a) lists five categories of funds and specific amounts of funds which IHS is required to pay the Corporation: Recurring Base ($15,465,949.00), Non-Recurring Funding ($371,701.00), Alaska Area Tribal Shares ($514,291.00), Special Funds ($0), and Headquarters Tribal Shares ($850,151.00).

24. In Section 4(b) of BBAHC's Addendum the IHS agreed to pay the Corporation $640,396.00[2] in contract support costs.

25. Sections 4(a) and (b) of BBAHC's Addendum thus require the IHS to pay BBAHC a total of $17,842,488.00. From this amount is deducted $1,539,489.20, an amount which the IHS is entitled to

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

[2] The figure identified in the Addendum includes $147,000.00 for contract support associated with "start-up costs." Start-up costs are provided for in section 4(c) of the Addendum but have not been negotiated yet. Consequently $147,000.00 has been deducted from the amount set out in this paragraph.

retain under Sections 5(b) and (c) of the Addendum. Thus, the total amount that the IHS is obligated to pay BBAHC in one annual lump sum payment under the Compact, AFA and Addendum is $16,302,998.80.

26. The IHS awarded BBAHC three months funding on November 30, 1995, for the period of October 1, 1994 through December 30, 1994 in the amount of $4,145,400.00. On January 6, 1995, the IHS paid BBAHC one lump sum payment of $10,106,554.00 and on January 10, 1995, the IHS made a payment of $148,696.00. On June 9, 1995, the IHS paid BBAHC $993,848.00, a payment that included amounts due for tribal shares. The total amount which remains due and owing by the IHS to BBAHC in a lump sum payment under the terms of the Compact, AFA and Addendum is $908,500.80.

27. On December 8, 1994, BBAHC filed a claim under the CDA requesting that all funds remaining due and owing, including interest on such funds, be immediately paid to BBAHC and a written decision on the claim in the event the claim was denied.

28. On January 6 and 10, 1995, after the CDA claim was filed by BBAHC, the IHS paid the Corporation a portion of the funds due under the Addendum. On June 9, 1995, the IHS paid BBAHC a portion of the funds identified in Section 4(a) of the Addendum as Alaska and Headquarters tribal shares. The IHS has yet to pay BBAHC any funds identified in Section 4(b) of the Addendum or as contract support costs on tribal shares.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX (907) 257-5399

29. On February 24, 1995 the Director of the IHS responded to the claim filed by BBAHC under the CDA. In his letter the Director confirmed that the IHS would pay BBAHC all Tribal Shares remaining due and owing. He also stated that he was interested in re-negotiating any commitments that the IHS made to pay BBAHC contract support costs on tribal shares, but he made it clear that "[i]n the absence of any renegotiations, the IHS will honor any commitments made by the Agency... ."

30. On March 3, 1995, shortly after receiving the Director's February 24, 1995 letter BBAHC declined in writing to renegotiate any of the amounts set out in the AFA and Addendum. BBAHC made clear that it expected to be paid all amounts due under the AFA and Addendum, including all contract support costs, Alaska and Headquarters tribal shares, as well as all interest due on unpaid amounts and amounts paid late, as provided for under the CDA.

C. <u>Southeast Alaska Regional Health Corporation</u>

31. SEARHC was a member of the consortium on behalf of whom ANHB submitted the All-Alaska compact proposal to the IHS. SEARHC participated in the negotiations with IHS and signed the Compact on behalf of the 19 federally-recognized Tribes in Southeast Alaska that sanction it as a Tribal Organization on September 21, 1994. The compact was submitted to Congress on October 30, 1994, and became effective for SEARHC on January 1, 1995.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

32. SEARHC negotiated and entered into an AFA with the Director of the IHS on June 30, 1994. On September 21, 1994, after renegotiations with the IHS, SEARHC signed a revised AFA. The revised AFA was submitted to Congress on October 30, 1994, and became effective for SEARHC on January 1, 1995. The revised AFA transfers specific responsibilities and funds to carry out those responsibilities from the IHS to SEARHC for the delivery of health care to Alaska Natives and American Indians in Southeast Alaska.

33. SEARHC elected to have funds due under its revised AFA paid in one annual lump sum payment. Section 5 of the revised AFA provides that, with the exception of certain specifically identified amounts, all funds identified in Section 4 shall be paid in accordance with Article II, Section 4(a) of the Compact in one annual lump sum payment to be made by check or wire transfer.

34. Section 4 of SEARHC's revised AFA identifies the amount of funds that the IHS is obligated to pay SEARHC. Section 4(A) lists five categories of funds and specific amounts of funds which IHS is required to pay the Corporation. When calculated for a nine month period (January 1, 1995 to September 30, 1995), the amount that the IHS was required to pay SEARHC was as follows: Recurring Base and Non-Recurring Funding ($21,264,853.00), Alaska Area Tribal Shares ($1,476,441.00),

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE • SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 • FAX: (907) 257-5399

Headquarters Tribal Shares ($830,448.00) and Contract Support on Tribal Shares ($297,912.00).

35. Section 4 of SEARHC's AFA requires the IHS to pay SEARHC a total of $22,680,654.00. From this amount is deducted $5,680,000.00, an amount which the IHS is entitled to retain under Sections 4(B) and (C) of the revised AFA. Thus, the total lump sum payment under the Compact and AFA is $20,189,654.00.

36. On January 27, 1995, the IHS paid SEARHC one lump sum payment of $18,479,836.00 On May 18, 1995, the IHS paid SEARHC $1,146,776.00 a payment that included amounts due for tribal shares. Thus, the total amount due SEARHC in one annual lump sum under the Compact and revised AFA is $563,042.00.

37. On January 26, 1995, SEARHC filed a claim under the CDA requesting that all funds remaining due and owing, including interest on such funds, be immediately paid to SEARHC and a written decision on the claim in the event the claim was denied.

38. On January 27, 1995, after the CDA claim was filed by SEARHC, the IHS paid the Corporation a portion of the funds due under the revised AFA. On May 18, 1995 the IHS paid SEARHC a portion of the funds identified in Section 4 of the AFA as Alaska and Headquarters tribal shares. The IHS has yet to pay SEARHC any funds identified in Section 4 of the AFA as contract support on tribal shares.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE • SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 • FAX: (907) 257-5399

D. Maniilaq Association

39. Maniilaq was a member of the consortium on behalf of whom ANHB submitted the All-Alaska compact proposal to the IHS. Maniilaq participated in the negotiations with IHS and signed the Compact on behalf of the 12 federally-recognized Tribes in the Northwest Arctic Borough and Point Hope that sanction it as a Tribal Organization on September 29, 1994. The compact was submitted to Congress on October 30, 1994 and became effective for Maniilaq on January 1, 1995.

40. Maniilaq negotiated and entered into an AFA with the Director of the IHS on September 29, 1994. The AFA was submitted to Congress on October 30, 1994, and became effective for Maniilaq on January 1, 1995. The AFA transfers specific responsibilities and funds to carry out those responsibilities from the IHS to Maniilaq for the delivery of health care to Alaska Natives and American Indians in the Northwest Arctic Borough and Point Hope.

41. Maniilaq elected to have funds due under its AFA paid in one annual lump sum payment. Section 5(A) of the AFA provides that, with the exception of certain specifically identified amounts, all funds identified in Section 4 of the AFA shall be paid in accordance with Article II, Section 4(a) of the Compact in one annual lump sum payment to be made by check or wire transfer.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

42. Section 4 of Maniilaq's AFA identifies the amount of funds that the IHS is obligated to pay Maniilaq. Section 4(A) lists five categories of funds and specific amounts of funds which IHS is required to pay the Corporation: Recurring Base ($10,771,330.00), Non-Recurring Funding ($248,500.00), Alaska Area Tribal Shares ($343,611.00), Special Funds ($1,102,000.00) and Headquarters Tribal Shares ($609,429.00).

43. In Section 4(B) of Maniilaq's AFA, the IHS agreed to pay contract support costs in the amount of $1,643,626.00.

44. Sections 4(A) and (B) of Maniilaq's AFA require the IHS to pay Maniilaq a total of $14,718,496.00. From this amount is deducted $2,235,332.00, an amount which the IHS is entitled to retain under Sections 5(B) and (C) of the AFA. Thus, the total amount that the IHS is obligated to pay Maniilaq in one annual lump sum payment under the Compact and AFA is $12,483,164.00.

45. The IHS awarded Maniilaq funds for the period of October 1, 1994 through December 30, 1994, in the amount of $4,204,983.00. These funds were paid to Maniilaq in a Title I contract, as Maniilaq's AFA only became effective on January 1, 1995. On February 7, 1995, the IHS paid Maniilaq one lump sum payment of $4,517,878.00.[3] On May 30, 1995, the IHS paid

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

---

[3] This payment included $1,992,400 for staffing of a new hospital in Kotzebue, Alaska. This amount was not included in Section 4(A) and (B) of Maniilaq's AFA as an amount that the IHS was obligated to pay Maniilaq I one lump sum payment. The $1,922,400 has been deducted from the total payment amount identified in this paragraph.



82

Maniilaq $638,019[4]. Thus, the total amount due Maniilaq in one annual lump sum under the Compact and AFA is $3,122,284.

46. On January 16, 1995, Maniilaq filed a claim under the CDA requesting that all funds remaining due and owing, including interest on such funds, be immediately paid to Maniilaq and a written decision on the claim in the event the claim was denied.

47. On February 7, 1995, and May 30, 1995, after the CDA claim was filed by Maniilaq, the IHS paid the Corporation a portion of the funds due under the AFA. The IHS failed, however, to pay Maniilaq any funds identified in Sections 4(A) and (B) of the AFA as special funds or contract support on tribal shares.

48. On March 7, 1995, the Director of the IHS responded to the claim filed by Maniilaq under the CDA. In his letter the Director confirmed that the IHS would pay Maniilaq all tribal shares remaining due and owing. He also stated that he was interested in re-negotiating any commitments that the IHS made to pay Maniilaq contract support costs on tribal shares, but he made it clear that "[i]n the absence of any renegotiations, the IHS will honor any commitments made by the Agency... ." The Director did not, however, respond directly to Maniilaq's request for immediate payment of the special funds.

[4] The actual payment was $644,219.00. The IHS has not to date provided a written breakdown of the funds which make up this payment. However, the Agency did provide Maniilaq an oral breakdown of the funds, and Maniilaq believes that the Agency unilaterally and improperly reduced the amounts due by the IHS in the Agreement by approximately $6,200.00.

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

49. On March 17, 1995, shortly after receiving the Director's March 7, 1995 letter, Maniilaq declined in writing to renegotiate any of the amounts set out in the AFA. Maniilaq stated that it expected to be paid all amounts due under the AFA, including all contract support costs, Alaska and headquarters tribal shares, special funds, as well as all interest due on unpaid amounts and amounts paid late, as provided for under the CDA.

E. IHS' Actions re: Alaska Area and Headquarters Tribal Shares and Special Funds

50. At no time has IHS contested that BBAHC, SEARHC, and Maniilaq have a legal right under the Compact, AFAs and Addenda to be paid all Alaska and Headquarters tribal shares and special funds that are identified in those agreements in one lump sum payment in accordance with Article II, section 4(a) of the Compact.

51. In his February 24, 1995 and March 7, 1995, responses to BBAHC's and Maniilaq's CDA claims the Director of the IHS confirmed that the IHS would pay the Alaska Area and Headquarters tribal shares due under the AFAs and Addenda. In addition, IHS personnel on a number of occasions promised to the Plaintiffs that the tribal shares would be paid immediately:

(i) On November 30, 1994, in Albuquerque, New Mexico, the IHS Director met with representatives of BBAHC, SEARHC,

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399



84

Maniilaq and other co-signers of the Compact and assured them that the commitments made in their AFAs would be met.

(ii) On February 25, 1995, Reuben Howard, the Acting Director of the Office of Tribal Self-Governance, stated to BBAHC, SEARHC, and Maniilaq (through their attorneys) that he was arranging for payment of tribal shares due under the AFAs.

(iii) On May 4, 1995, at the Compact 1996 pre-negotiations in Anchorage, Alaska, the IHS lead negotiator, Dr. Craig Vanderwagon, agreed to provide information on the status of payments due under the Compact and AFAs to the attorney for BBAHC, SEARHC, and Maniilaq by May 8, 1995. On May 8, 1995, Dr. Vanderwagon indicated that tribal shares would be paid promptly.

(iv) On May 22, 1995, Dr. Vanderwagon stated to BBAHC, SEARHC, and Maniilaq's attorneys that tribal shares had been paid.

Despite these repeated assurances of full and prompt payment, the IHS paid the Plaintiffs a portion of tribal share funds due and owing under the Compact and AFAs in June, 1995.

F. <u>IHS' Actions re: Contract Support Costs</u>

52. The IHS' obligation to pay BBAHC, SEARHC, and Maniilaq contracts support costs is described in some detail in Section 4(B) of the Plaintiffs' AFAs and Addenda. Section 4(B) of those agreements all contain almost identical language which provides

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399



85

that contract support costs in the amounts listed in the AFAs shall be paid by the IHS to each Plaintiff, subject to Congressional appropriation, under ISDM 92-2 or its successor. The amount of contract support costs is to be based upon each Plaintiffs' indirect cost agreement and applicable law and are to be added to the agreement as soon as available through appropriations. Indirect costs are to be negotiated in compliance with Section 106(d)(1) and 106(e) of the Act.

53. Congress appropriated funds, including contract support costs, by means of a general appropriation sufficient to fund the Alaska Tribal Health Compact and other compacts negotiated under Title III of the Act for the 1995 fiscal year on September 30, 1994.

54. ISDM 92-2 contains the IHS policy relating to the distribution of contract support costs. The memorandum sets forth a number of factors that are to be considered when the amount of contract support costs that a tribe or tribal organization is entitled to receive under Section 106(a) of Title I of the Act is negotiated with the IHS. These factors were taken into account when the Plaintiffs negotiated in good faith with the IHS the amount of contract support costs that the parties ultimately agreed to identify in the AFAs and Addenda.

55. ISDM 92-2 provides that Contract Support Costs are to be paid to tribes and tribal organizations by the IHS out of the

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399



86

Indian Self-Determination Fund (ISD Fund). The memorandum requires IHS Area Offices to determine the contract support costs needs of tribes and tribal organizations that submit contract proposals and to submit a request for the costs to IHS headquarters within sixty days after the contract proposal was submitted to the Agency.

56. ISDM 92-2 requires the IHS Office of Tribal Activities, Division of Self-Determination Services (OTA) to review Area Office requests for contract support costs to determine if sufficient funds are available in the ISD Fund. The memorandum directs OTA to immediately respond to Area Offices to advise if the funds are available. If the funds are not available in the ISD Fund the available amount is to be used as the basis to approve or decline a proposal, and for any subsequent award. Deficiencies for existing contracts will be included in the annual report to Congress required by section 106(c) of the Act. If funds from the ISD Fund are inadequate to fully fund all requests, then requests to be funded that month will be selected based on the earliest receipt date.

57. The IHS has not complied with many of the requirements set out in ISDM 92-2 and the Agency has acted in a manner inconsistent with the provisions of the Compact, AFAs, and Addenda which relate to the payment of contract support costs. For example:

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

(i) The Alaska Area Office (nor any other IHS office, as far as the Plaintiffs are aware) did not forward a request for contract support costs to the OTA within sixty days after the All Alaska Self-Governance proposal was submitted to the Agency. To the best of Plaintiffs' knowledge and belief, no such a request has been submitted by any IHS office to date.

(ii) Congress made sufficient general appropriations to the agency to fully fund the amounts of contract support funds which the agency is contractually obligated to pay to Plaintiffs on September 30, 1994, pursuant to P.L. 103-332. OMB apportioned the 1995 fiscal year appropriations for distribution on November 14, 1994. The IHS has yet to pay any of the Plaintiffs contract support costs on tribal shares.

COUNT I

(CONTRACT CLAIM)

58. Paragraphs 1 through 57 are realleged and are fully incorporated herein.

59. As a result of the breaches of the Plaintiffs' AFAs and Addenda by the Defendants and of the failure and refusal of the Defendants to make payments due to Plaintiffs from funds which were appropriated by Congress, as is more fully set forth above, Defendants are liable to Plaintiffs in at least the amounts below, which amounts do not include interest:

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

BBAHC: $908,500.80

SEARHC: $563,042.00

MANIILAQ: $3,122,284.00

60. The IHS is required under the terms of the Compact, AFAs and Addenda to pay BBAHC, SEARHC, and Maniilaq a sum certain in one annual lump sum payment.

61. The IHS' failure to pay BBAHC, SEARHC, and Maniilaq one annual lump sum as required by the Compact, AFAs, or Addenda, and its failure to pay all three organizations all of the funds due and owing under those agreements in a timely fashion is a breach of the terms of the Compact, AFAs, and Addenda. Defendants are therefore liable to Plaintiffs for breach of contract in at least the amounts set forth below:

BBAHC: $908,500.80

SEARHC: $563,042.00

MANIILAQ: $3,122,284.00

COUNT II

(INTEREST CLAIM)

62. Paragraphs 1 through 61 are realleged and are fully incorporated herein.

63. The IHS' actions have deprived BBAHC, SEARHC, and Maniilaq of their contractual right to invest the funds and earn interest on them until they are needed to perform the

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

organizations' responsibilities and duties under the Compact, AFAs, and Addenda. BBAHC, SEARHC, and Maniilaq have lost significant additional revenues to provide much-needed health care services to Alaska Natives and American Indians located in the Bering Straits region, the Bristol Bay and Calista regions, the Southeast Alaska Region, and the Northwest Borough and Point Hope.

64. BBAHC, SEARHC, and Maniilaq have a statutory right to be paid interest on all funds paid late or unpaid as provided for under section 611 of the CDA, and Defendants are liable to Plaintiffs for such amounts to be proven at trial. 41 U.S.C. § 611.

COUNT III

(MANDAMUS CLAIM)

65. Paragraphs 1 through 64 are realleged and are fully incorporated herein.

66. The Defendants have a clear, non-discretionary legal duty under Title III of the Act and the terms of the Compact, AFAs, and Addenda that were negotiated and signed by the parties thereunder to pay BBAHC, SEARHC, and Maniilaq sums certain in one annual lump sum payment. The terms of the agreements do not provide any discretion to the IHS about when and if payment is to

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399



90

be made. IHS has repeatedly acknowledged that it is obligated to pay the annual lump sum payment.

67. The IHS' failure to pay BBAHC, SEARHC, and Maniilaq one annual lump sum as required by the Compact, AFAs, or Addenda, and its failure to pay all three organizations all of the funds due and owing under those agreements is arbitrary, capricious, and is a violation of Title III of the Indian Self-Determination and Education Assistance Act, and the mandatory terms of the Compact, AFAs, and Addenda, fully executed on behalf of the Secretary.

68. Plaintiffs are therefore entitled to a writ of mandamus or an order in the nature of a writ of mandamus compelling Defendants to forthwith pay to Plaintiffs all of the funds due and owing under the Compact, AFAs, and/or Addenda.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs BBAHC, SEARHC, and Maniilaq pray for the following relief against Defendants Secretary Shalala and Director Trujillo and each of them:

1. For judgment at least in the following amounts: Bristol Bay Area Health Corporation $908,500.80; Southeast Alaska Regional Health Corporation $563,042.00; and Maniilaq Association $3,122,284.00, plus interest in the amount that would have been earned had the money been paid in one lump sum as specified by the Compact, AFAs and Addenda.

DAVIS WRIGHT TREMAINE
Law Offices
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

2. That the Court adjudge, decree and order the Defendants to immediately pay to the Plaintiffs all funds remaining due and owing, including all Alaska and Headquarters tribal shares, special funds and contract support amounts, identified in the Compact, AFAs, and Addenda;

3. That the Court adjudge, decree, and order the Defendants to pay interest to Plaintiffs in accordance with Section 611 of the CDA on all amounts due and owing under the Compact, AFAs, and Addenda from the time the Plaintiffs requested a decision from the Director of the IHS until such time as the IHS pays the Plaintiffs in full all of the amounts due and owing under those agreements;

4. That the Court award Plaintiffs attorneys fees and all other costs incurred as a result of this action; and

5. That the Court grant such other and further relief as to the Court deems proper.

DATED at Anchorage, Alaska, this 7th day of July, 1995.

DAVIS WRIGHT TREMAINE
Local Counsel for Plaintiffs
Bristol Bay Area Health Corporation
and Southeast Alaska Regional
Corporation

By: Parry Grover by Ted Wellman
Parry Grover

By: Ted Wellman
Ted Wellman

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 West 7th Avenue · Suite 1450
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

DATED at Anchorage, Alaska, this 7th day of July, 1995.

POPE & KATCHER
Local Counsel for Plaintiff
Maniilaq Association

By: Douglas Pope
Douglas Pope

DATED at Anchorage AK, this 7th day of July, 1995.

HOBBS, STRAUS, DEAN & WALKER
Attorneys for Plaintiffs

By: Jerry C. Straus by [signature]
Jerry C. Straus

By: Geoffrey D. Strommer by [signature]
Geoffrey D. Strommer

DAVIS WRIGHT TREMAINE
LAW OFFICES
550 WEST 7TH AVENUE · SUITE 1450
ANCHORAGE, ALASKA 99501
(907) 257-5300 · FAX: (907) 257-5399

W

FEB. 10. 2000 4:14PM NO. 0755 P. 4/4
Fax 202/296-8834 Bob deliver to IHS Fed, CEO
Fax Barbara Hudson 301/443-2639

**SETTLEMENT**
**BRISTOL BAY HEALTH CORPORATION**
September 21, 1995

1. It is the mutual desire of the Indian Health Service (IHS) and Bristol Bay Area Health Corporation to settle their differences currently before the Federal District Court in Alaska, i.e., Bristol Bay Area Health Corporation, et al v. Shalala, et al. Case No. A95-258 (D.Ct. Alaska, June 7, 1995)

2. The IHS is committed to treating all tribes in a fair and equitable manner: tribes with contracts under Title I of the Indian Self Determination Act (ISDA), tribes with compacts under Title III of ISDA, and tribes electing to continue to received services directly from the IHS.

3. With respect to payment of contract support costs, the IHS, consistent with existing policy, has calculated FY 1995 contract support costs for Bristol Bay Area Health Corporation to be $506,628. The calculation is outlined in more detail in Attachment A, which is hereby incorporated into this Agreement. Payment of this amount will be made from the FY 1995 Indian Self Determination (ISD) fund on or before September 30, 1995.

4. With respect to payment of Bristol Bay Area Health Corporation's share of Headquarter's resources, i.e., Headquarter Tribal Shares, the IHS, within 21 days of the effective date of this Agreement, will pay to Bristol Bay Health Corporation $284,890 for Headquarter Tribal Shares under the Tribe's FY 1995 annual funding agreement. Such payment will be from FY 1995 funds on or before September 30, 1995..

5. Bristol Bay Area Health Corporation may choose to accept or reject this proposal without having any effect on any other co-signer of the Alaska Compact.

6. This Agreement shall not be construed as an admission by the IHS or the United States of any legal or specific monetary liability as to any or all claims, nor shall this Agreement be interpreted to constitute a precedent or argument in this or any other case. However, to the extent that the amount of contract support funds available to Bristol Bay Area Health Corporation in FY 1995 affects, under IHS policy, the funds available to Bristol Bay Area Health Corporation for FY 1996 and future years, the sum provided under paragraph 3 shall be accepted by IHS as attributable to the FY 1995 program expansion.

7. By signing this agreement, Bristol Bay Area Health Corporation waives any and all claims currently before the court, including payment for interest and attorney fees, subject to receiving payment under sections 3 and 4.

8. This Agreement and the Attachment set forth the entire agreement between the parties relating to the issues before the court and fully supersedes any and all prior agreements or understandings between the parties pertaining to the subject matter hereof.

ACCEPTED:

Michel Lincoln, Deputy Director
Indian Health Service

9-21-95
Date

, CEO
Bristol Bay Health Corporation

9/22/95
Date

cc: Contract File Finance

61

ATTACHMENT A

**BRISTOL BAY**

| | | | |
|---|---|---|---|
| HQ Shares | 510,601<br>339,550 | | |
| Area Shares | 514,291 | | |
| Total base for fringe benefits need calculation per ISDM 92-2. | + 1,364,442 | | |
| **Total DCSC Required (15% of above total)** | | | **204,666** |
| Add (from above), Area shares since HQ shares in this instance is Equipment and Administration | | 514,291 | |
| Total Base for calculation of indirect CSC requirements per tribe's indirect cost rate agreement. | | 718,957 | |
| X 42% indirect cost rate = **Total Required ICSC** | | | **301,962** |
| **Total CSC Requirements per ISDM 92-2** | | | **506,628** |

62

TOTAL P.04

FILED

JAN 0 2 1996

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

LODGED
DEC 29 1995

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| BRISTOL BAY AREA HEALTH CORPORATION, an Alaska Corporation, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>DONNA E. SHALALA, Secretary of Health and Human Services, et al,<br><br>Defendants. | ) | Case No. A95-258 Cv. (JKS)<br><br>**ORDER** |

This matter having come to the court's attention with a stipulation to dismiss, it hereby ORDERED.

1. All Claims asserted by Bristol Bay Area Health Corporation ("BBAHC") and Southeast Alaska Regional Health Corporation ("SEARHC") against all defendants are dismissed with prejudice, with each side to bear its own costs and attorney fees

2. BBAHC and SEARHC are dismissed as parties as they have no additional claims stated in the complaint. They are to be removed from the service list.

Date: 1/2/96

James K. Singleton
U.S. District Court Judge

lodged by S. Lindquist

A95-0258--CV (JKS)

---

D. POPE
P. GROVER (DAVIS)
S. LINDQUIST (US-ATTNY)

15

ROBERT C. BUNDY
UNITED STATES ATTORNEY

SUSAN LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, Rm. 253, #9
Anchorage, AK 99513-7567
(907) 271-5071

FILED

DEC 29 1995

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
[signature] Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRISTOL BAY AREA HEALTH CORPORATION, an Alaska Corporation, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>DONNA E. SHALALA, Secretary of Health and Human Services, et al,<br><br>Defendants. | Case No. A95-258 Cv. (JKS)<br><br>**STIPULATION TO DISMISS WITH PREJUDICE ALL CLAIMS ASSERTED BY BRISTOL BAY AREA HEALTH CORPORATION and SOUTHEAST ALASKA REGIONAL HEALTH CORPORATION AGAINST ALL DEFENDANTS** |

Now Come the Plaintiffs, Bristol Bay Area Health Corporation ("BBAHC") and Southeast Alaska Regional Health Corporation ("SEARHC") and all Defendants, through counsel and stipulate to dismiss with prejudice all claims between them. The parties have settled their dispute. Each side is to bear its own costs and attorney fees.

RESPECTFULLY SUBMITTED this 28th day of December ~~November,~~ 1995.

14

DAVIS WRIGHT TREMAINE

TED WELLMAN
for BBAHC and SEARHC

ROBERT C. BUNDY
United States Attorney

11-27-95

SUSAN LINDQUIST
Assistant U.S. Attorney
for Donna Shalala, Dr. Michael Trujillo, Department of Health and Human Services and Indian Health Service

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel of record on ~~November 27, 1995~~, via: 12/29/95

(✓) U.S. Mail
( ) U.S. Mail Certified
( ) FAX
( ) Hand Delivery

Ted Wellman
Davis Wright Tremaine
550 West 7th Avenue, Suite 1450
Anchorage, AK 99501

Geoffrey D. Strommer
Hobbs, Straus, Dean & Walker
1001 SW 5th Ave 13th fl
Portland, OR 97204-1147

Douglas Pope
Pope & Katcher
421 W. 1st Avenue, Suite 220
Anchorage, AK 99501

Executed at ~~Anchorage~~, Alaska, on ~~November 27, 1995~~. 12/29/95

Office of the U.S. Attorney