No. 07-725C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BRISTOL BAY AREA
HEALTH CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

JOSEPH A. PIXLEY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L. Street, N.W.
Attn: Classification Unit 8th Floor
Washington, D.C. 20530
Tel. (202) 307-0843
Fax: (202) 307-0972

Attorneys for Defendants

OF COUNSEL:

SCOTT S. DRIGGS
Assistant Regional Counsel
U.S. Department of Health and
Human Services
1961 Stout Street, Room 325
Denver, Co 80294
Tel: (303) 844-7808
Fax: (303) 844-6665

January 30, 2007

# TABLE OF CONTENTS

ISSUES PRESENTED........................................................................................ 1

STATEMENT OF THE CASE.............................................................................. 2

I. INTRODUCTION.......................................................................... 2

II. STATUTORY BACKGROUND.......................................................... 3

III. STATEMENT OF FACTS. ................................................................ 5

A. Facts In The Complaint.............................................................. 5

B. Facts And Procedural History Relating To Plaintiff's 1995 Lawsuit. ........ 7

ARGUMENT.................................................................................................. 8

I. BECAUSE THE STATUTE OF LIMITATIONS HAS PASSED FOR PLAINTIFF'S CLAIM TO FUNDS FOR CONTRACT YEARS 1997 AND 1998, THIS COURT LACKS JURISDICTION OVER THOSE CLAIMS.................................................................................... 8

II. BRISTOL BAY'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED . ....................................................................................... 11

A. Legal Standard Under RCFC 12(b)(6).............................................. 11

B. In Considering A Motion To Dismiss Under RCFC 12(b)(6), The Court Should Consider Not Only Plaintiff's Complaint, But Also The Contracts That Are Central To Plaintiff's Allegations ...... 12

C. Bristol Bay Is Not Entitled To Additional CSC...................................... 14

D. Bristol Bay's Claims For FY 1995 Are Barred By Res Judicata. ............. 19

CONCLUSION.............................................................................................. 22

## TABLE OF AUTHORITIES

### CASES

Ammex, Inc. v. United States,
334 F.3d 1052 (Fed. Cir. 2003)........................................................ 19, 20, 21, 22

Anthony v. Marion County Gen. Hosp.,
617 F.2d 1164 (5th Cir. 1980). ......................................................................... 20

Bell Atlantic Corp. v. Twombly,
__ U.S. __, 127 S. Ct. 1955 (2007)........................................................... 11, 16

Bianchi v. United States,
475 F.3d 1268 (Fed. Cir. 2007)......................................................................... 10

Biomedical Patent Management Corp. v. California, No. 2006-1515,
2007 WL 3071687 (Fed. Cir. Oct. 23, 2007)................................................... 11

Blaze Constr., Inc. v. United States,
27 Fed. Cl. 646 (1993). .................................................................................... 11

Boynton v. Headwaters Inc.,
243 Fed. Appx. 610 (Fed. Cir. 2007) ............................................................... 20

Bristol Bay Area Health Corporation, et al. v. Shalala, et al.,
Case No. A95-258 (D. Ct. Alaska, July 7, 1995).............................................. 7

Cedars-Sinai Medical Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993)............................................................................ 8

Cherokee Nation v. Leavitt,
543 U.S. 631 (2005)..................................................................................... 14, 16

Cortec Indus., Inc. v. Sum Holding, L.P.,
949 F.2d 42 (2d Cir. 1991)................................................................................ 13

Curtis v. United States,
212 Fed. Appx. 991 (Fed. Cir. 1991)................................................................ 11

Federated Dep't Stores Inc. v Moitie,
452 U.S. 394 (1981).................................................................................... 19, 22

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991)......................................................................... 11

Haskell v. Time, Inc.,
857 F. Supp. 1392 (E.D. Cal. 1994) ... 13

Indium Corp. Of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985) ... 9

Inland Steel Company v. LTV Steel Company,
364 F.3d 1318 (Fed. Cir. 2004) ... 20

James M. Ellett Constr. Co. v. United States,
93 F.3d 1537 (Fed. Cir. 1996) ... 9

John R. Sand & Gravel Co. v. United States,
552 U.S. ___ (2008) ... 10

Mattes v. ABC Plastics, Inc.,
323 F.3d 695 (8th Cir. 2003) ... 13

McNutt v. Gen. Motors Acceptance Corp. of Ind.,
298 U.S. 178 (1936) ... 8

Ness Inv. Corp. v. United States,
219 Ct. Cl. 440,
595 F.2d 585 (1979) ... 21

Oceanic S.S. Co. v. United States,
165 Ct. Cl. 217 (1964) ... 10

Page v. United States,
729 F.2d 818 (D.C. Cir. 1984) ... 21

Pueblo of Zuni v. United States,
467 F. Supp. 2d 1114 (D.N.M. 2006) ... 16

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) ... 8

Samish Indian Nation v. United States,
419 F.3d 1355 (Fed. Cir. 2005) ... 16

Scheuer v. Rhodes,
416 U.S. 232 (1974) ... 8

Schrader v. United States,
75 Fed. Cl. 242 (2007). ........ 19, 21, 22

Sebastian v. United States,
185 F.3d 1368 (Fed. Cir. 1999). ........ 13

Southern Cal. Edison Inc. v. United States,
58 Fed. Cl. 313 (2003). ........ 13

Sunshine Anthracite Coal Co. v. Adkins,
310 U.S. 381 (1940). ........ 19

Teagardener v. Republic-Franklin Inc. Pension Plan,
909 F.2d 947 (6th Cir. 1990). ........ 13

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
127 S. Ct. 2499 (2007). ........ 12, 13, 14

Venture Assocs. Corp. v. Zenith Data Sys. Corp.,
987 F.2d 429 (7th Cir. 1993). ........ 12

W & D Ships Deck Works, Inc. v. United States,
39 Fed. Cl. 638 (1997). ........ 12, 14

Warfield v. AlliedSignal TBS Holdings, Inc.,
267 F.3d 538 (6th Cir. 2001). ........ 20

**STATUTES**

25 C.F.R. §§ 900.12, 900.8(h). ........ 15, 18

25 U.S.C. § 450 ........ 2

25 U.S.C. § 450a(b). ........ 3

25 U.S.C. § 450b(c). ........ 4

25 U.S.C. § 450b(g). ........ 15

25 U.S.C. § 450f(a)(1). ........ 4, 15, 18

25 U.S.C. § 450f(a)(2). ........ 15

25 U.S.C. § 450f(b). ........ 4

25 U.S.C. § 450b(f). .... 5

25 U.S.C. § 450f(a)(1). .... 18

25 U.S.C. § 450f(a)(2). .... 18

25 U.S.C. § 450f(b)(3). .... 15

25 U.S.C. § 450j-1(a)(1). .... 4, 5

25 U.S.C. § 450j-1(a)(2). .... 4, 5

25 U.S.C. § 450j-1(a)(3)(A)(i). .... 4

25 U.S.C. § 450j-1(a)(3)(A)(ii). .... 5

25 U.S.C. § 450j-l(a)(3)(B). .... 5, 18

25 U.S.C. § 450j-1(a)(5). .... 4

25 U.S.C. § 450j-1(b). .... 5

25 U.S.C. § 450j(c). .... 15

25 U.S.C. § 450j-(c)(1). .... 5

25 U.S.C. § 450j-l(c). .... 18

25 U.S.C. § 450j-2. .... 5

25 U.S.C. § 450j(e). .... 15

25 U.S.C. § 450l(c)(b)(5). .... 15

25 U.S.C. § 450m-1(a). .... 9

25 U.S.C. § 450m-1(c). .... 6

25 U.S.C. § 1601. .... 3

25 U.S.C. § 1603(d). .... 3

25 U.S.C. § 1621(a)(4). .... 4

25 U.S.C. § 1661(a). .... 3

28 U.S.C. § 2412........................................................................................................ 6

28 U.S.C. § 2501........................................................................................................ 10

41 U.S.C. § 601.......................................................................................................... 2

41 U.S.C. § 605(a). ................................................................................................ 6, 9, 10

41 U.S.C. § 605(c)(5)................................................................................................. 6

41 U.S.C. § 609(a). ..................................................................................................... 9

**TREATISES**

5B, Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 and Sup. 2007)... 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BRISTOL BAY AREA HEALTH CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 07-725C** |
| | ) | **(Judge Sweeney)** |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff Bristol Bay Area Health Corporation's ("Bristol Bay" or "BBAHC" or "plaintiff") complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

**<u>ISSUES PRESENTED</u>**

1) Whether the six-year statute of limitations applicable to cases brought under the Contract Disputes Act bars Bristol Bay's actions for breach of contract that accrued in fiscal years ("FY") 1997-1998.

2) Whether, as a matter of law, Bristol Bay is entitled to additional contract support costs, based upon statute, beyond what the parties agreed to under the express terms of the contracts.

3) Whether Bristol Bay's claim for breach of contract for FY 1995 is barred by the doctrine of <u>res judicata</u>, because it arises from the same transactional facts as a prior suit in Federal court in Alaska, which was dismissed with prejudice pursuant to a settlement agreement

between the parties.

## STATEMENT OF THE CASE

### I. INTRODUCTION

Bristol Bay brings this breach of contract action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. ("CDA"). Bristol Bay entered into contracts with the Government to provide certain health care services to tribal members pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 et seq. ("ISDEAA"). Now, years later, Bristol Bay seeks to recover additional funds for indirect contract support costs ("CSC") in FY 1993 through FY 1999. Relying upon selective parts of the ISDEAA and "shortfall reports" produced by the Government in its annual reports to Congress, Bristol Bay alleges that it should have been awarded additional money beyond what the parties agreed to in the contracts.

As a threshold matter, two of Bristol Bay's claims are time-barred. Bristol Bay did not meet the applicable statute of limitations for two of the contract years at issue, FYs 1997 and 1998. Therefore, this Court lacks jurisdiction over claims for those years.

The gist of Bristol Bay's complaint is that defendant failed "to pay the full CSC required by the ISDEAA"; in other words, that defendant failed to pay Bristol Bay an additional amount of indirect CSC required *by statute*, above and beyond what was specified in the contracts. See Compl. ¶ 3. Bristol Bay misreads the statute. As a matter of law, the ISDEAA does not provide for any set amount of money, nor does it require the United States to pay an additional amount of indirect CSC beyond what the parties negotiate by contract. Rather, the ISDEAA contemplates a contract negotiation between the parties which, if unsuccessful and resulting in a declination, can immediately be challenged in court by a contractor. Consequently, there has been no breach of

contract and Bristol Bay's claims for FYs 1993-99 must be dismissed for failure to state a claim.

In addition, Bristol Bay previously brought suit for the FY 1995 claim in the United States District Court for the District of Alaska in 1995, which the court ordered dismissed with prejudice pursuant to settlement agreement between the parties. Consequently, Bristol Bay's claims for FY 1995 are barred by the doctrine of res judicata, or claim preclusion.

## II. STATUTORY BACKGROUND

Congress enacted the ISDEAA to allow Federally-recognized Indian tribes and Alaska Native villages to contract with the Federal government to operate many of the programs that the Government previously operated for the benefit of the tribes and villages, through what is termed a self-determination contract. The ISDEAA has the stated purpose to "permit an orderly transition from Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services." 25 U.S.C. § 450a(b). To achieve these policy objectives, the ISDEAA provides a framework for the orderly transfer of the administration and operation of traditionally Government-run programs to the Indian and Alaska Native people. A primary means for achieving this transfer is the self-determination contract.

The Indian Health Service ("IHS"), an agency within the Department of Health and Human Services, was established to carry out the responsibilities, authorities, and functions of the United States in providing health care services to Indians and Indian tribes, including Alaska Native villages. 25 U.S.C. § 1661(a). See 25 U.S.C. § 1603(d) (defining "Indian tribe" to include Alaska Native villages). Under the Indian Health Care Improvement Act, 25 U.S.C. §§ 1601-1683, IHS is authorized to provide a wide range of health care programs, including clinical

programs and public health programs. IHS provides these programs either directly or through contracts with tribes or tribal organizations under the ISDEAA. 25 U.S.C. § 1621(a)(4).

Section 450f(a)(1) of the ISDEAA directs the Secretary of Health and Human Services ("the Secretary" or "DHHS"), "upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof . . . ." 25 U.S.C. § 450f(a)(1).[1] If the parties are unable to agree on the appropriate funding level, the Secretary can decline the proposal in part or in full. The tribal contractor has the right to seek review of a declination either through the administrative appeals process or by a direct Federal court action. See 25 U.S.C. § 450f(b).

There are two types of funding for each ISDEAA contract. First, the ISDEAA contractor receives the amount the Secretary "would have otherwise provided for the operation of the programs" ("Secretarial amount"), which "shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs." 25 U.S.C. § 450j-1(a)(1). Second, the contractor receives contract support costs ("CSC"), id. § 450j-1(a)(2), which are the focus of this lawsuit.

CSC can be divided into three categories: (1) direct CSC, which are administrative costs of the contracted-for program, such as unemployment taxes or workers' compensation insurance, see id. § 450j-1(a)(3)(A)(I) and § 450b(c); (2) startup costs for the initial year of the contract "consisting of the reasonable costs that have been incurred or will be incurred on a one-time basis," id. § 450j-1(a)(5); and (3) indirect CSC, which are administrative costs that are shared by

[1] The statute also applies to certain (non-healthcare) services provided to Native Americans by the Department of Interior and the Secretary of Interior by the Interior's Bureau of Indian Affairs ("BIA"). However, BIA contracts are not at issue in this case.

several different programs or services. See id. § 450j-1(a)(3)(A)(ii); id. § 450b(f). Only indirect CSC are at issue in this lawsuit. See Compl. ¶¶ 2, 15.

Under the ISDEAA, contractors have the option of annually negotiating with IHS for the amount of funds the contractor is eligible to receive for indirect costs with IHS. 25 U.S.C. § 450j-l(a)(3)(B). However, the ISDEAA's statutory authority permits payment of only those CSC that are reasonable in light of the activities to be conducted. See id. § 450j-1(a)(2). Moreover, appropriations for IHS "may be expended only for costs directly attributable to [ISDEAA contracts or grants] and no funds . . . shall be available for any [CSC] associated with [any non-IHS contracts or grants]." Id. § 450j-2. Finally, IHS's payment of CSC, like all funding under the ISDEAA, is subject to the availability of appropriations. See id. § 450j-1(b); id. § 450j(c)(1).

## III. STATEMENT OF FACTS

### A. Facts In The Complaint[2]

Bristol Bay is a tribal organization that provides public health services to Alaska Natives and other eligible beneficiaries pursuant to ISDEAA agreements with the IHS. Compl. ¶¶ 1, 8. To provide such services, Bristol Bay entered into Annual Funding Agreements ("AFAs") with the Secretary of DHHS and the IHS under Title I ( for FYs 1993 and 1994) and Title III ( for FYs 1995-1999) of the ISDEAA. Compl. ¶ 10.

Bristol Bay alleges that the IHS breached these agreements by underpaying it indirect CSC in fiscal years1993 through 1999. Compl. ¶¶ 2, 15. Bristol Bay argues several theories of

[2] For purposes of this motion only, we accept as true the factual allegations set forth in plaintiff's complaint.

recovery. First, Bristol Bay alleges that IHS should have reprogrammed money from its lump-sum appropriation to pay the difference between what was contained in the FY 1993 through FY 1997 AFAs, and what Bristol Bay now claims is the "full amount" of indirect CSC, required by the ISDEAA. Compl. ¶¶ 2, 15, 16-19, 27-32.[3]

Bristol Bay's second theory of recovery is that the United States violated the "stable-funding" provisions of ISDEAA section 106(b) by failing to pay Bristol Bay the "proper" amount of $5,689,321 for each of the fiscal years 1998 and 1999. Compl. ¶¶ 20-23, 34-38. Bristol Bay claims $937,651 for FY 1998 and $296,405 for FY 1999. Compl. ¶¶ 37-38. Bristol Bay seeks a total of $9,132,576 for unpaid CSC, interest on that amount, and attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 450m-1(c). Compl. ¶ 39 C.

Pursuant to 41 U.S.C. § 605(a), Bristol Bay requested a contracting officer's decision on its CSC claims for FYs 1995-1999, on July 5, 2005, and on its CSC claims for FYs 1993 and 1994, on November 30, 2006. Compl. ¶¶ 5, 25. IHS denied the claims for FYs 1995 and 1996 in letters dated April 20, 2007 and October 25, 2006, respectively. Compl. ¶¶ 6, 25. Bristol Bay alleges that because the IHS has not issued a decision on the FY 1993-94 and FY 1997-99 claims within a reasonable time, they are deemed denied. Compl. ¶ 6 (citing 41 U.S.C. § 605(c)(5)).[4]

---

[3] Bristol Bay alleges similar "shortfalls" occurred for FYs 1998 and 1999. Compl. ¶ 34. However, Bristol Bay does not seek to recover the alleged "full documented shortfall" for each of these years, under its shortfall theory of recovery. Id. Instead, Bristol Bay seeks recovery for these years based upon alleged "stable-funding" violations. Id. ¶¶ 34-38.

[4] We understand that on April 20, 2007, the IHS sent a letter to Bristol Bay stating that after extending the response time earlier, the Government required an additional 180 days to decide its claims. On October 17, 2007, five days after Bristol Bay filed its complaint, the contracting officer denied Bristol Bay's claims for FYs 1997-98. We also understand that the

Bristol Bay filed its complaint on October 12, 2007.

**B. Facts And Procedural History Relating To Plaintiff's 1995 Lawsuit**

On June 30, 1994, Bristol Bay and the IHS negotiated and signed the Alaska Tribal Health Compact ("Compact" or "ATHC"), and an annual funding agreement (hereinafter "FY 1995 AFA"), which both became effective on October 1, 1994. See Ex. D (Bristol Bay's Complaint filed on July 7, 1995, in the United States District Court for the District of Alaska ("Alaska district court") in the case of Bristol Bay Area Health Corporation, et al. v. Shalala, et al. Case No. A95-258 (D. Ct. Alaska, July 7, 1995) at ¶¶ 14, 19, 20).[5] On September 29, 1994, Bristol Bay negotiated and signed an Addendum to the FY 1995 AFA. See Ex. D at ¶ 21. On December 8, 1994, Bristol Bay filed a claim "under the CDA" with IHS, "requesting that all funds remaining due and owing, including interest on such funds, be immediately paid to BBAHC." Ex. D at ¶ 27.

On July 7, 1995, Bristol Bay filed suit in the Alaska district court, alleging breach of the FY 1995 AFA and Addendum, pursuant to the ISDEAA. See Ex. D at ¶¶ 59-61. On September 22, 1995, the parties signed a Settlement Agreement ("Settlement Agreement"), whereby IHS agreed to pay Bristol Bay, inter alia, $506,628 for FY 1995 CSC. See Ex. E at ¶ 3 and Attachment A. Under the terms of the Settlement Agreement, Bristol Bay waived "any and all claims currently before the court." See Ex. E at ¶ 7. Pursuant to stipulated agreement between

contracting officer has no record of sending a decision letter for the FY 1999 claim. Regarding the FY 1993-94 claims, the contracting officer extended the deadline in 2006 for 180 days, but the contracting officer has no record of sending a decision letter to Bristol Bay for those years.

[5] Other plaintiffs in the 1995 action included the Southeast Alaska Regional Health Corporation ("SEARHC") and the Manilaq Association ("Manilaq"). These entities are not parties to the instant lawsuit.

the parties, the Alaska district court dismissed Bristol Bay's case with prejudice. See Ex. F (1/2/96 Order).

## ARGUMENT

### I. BECAUSE THE STATUTE OF LIMITATIONS HAS PASSED FOR PLAINTIFF'S CLAIM TO FUNDS FOR CONTRACT YEARS 1997 AND 1998, THIS COURT LACKS JURISDICTION OVER THOSE CLAIMS

Because Bristol Bay's claims for FYs 1997 and 1998 accrued over six years before Bristol Bay filed administrative claims for those years, its claims are barred by the statute of limitations. Therefore, the Court should dismiss those claims pursuant to RCFC 12(b)(1). In determining whether it has subject matter jurisdiction to entertain a plaintiff's complaint, the Court should presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974). If this Court's jurisdiction is challenged, a plaintiff cannot rely merely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). The plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

In deciding a motion to dismiss for lack of jurisdiction, the Court can consider evidentiary matters outside the pleadings. Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.") (citations omitted). In this vein, the Court is empowered to take judicial notice of undisputed contract documents, which form the basis of Bristol Bay's complaint,

without converting our motion to dismiss into one for summary judgment. Indium Corp. Of America v. Semi-Alloys, Inc., 781 F.2d 879, 883-84 (Fed. Cir. 1985) ("Because Semi-Alloys' motion for summary judgment actually sought a judgment by the district court that it lacked subject matter jurisdiction, the matter should have been raised by a renewed motion to dismiss under Rule 12(b)(1) . . . In deciding such a Rule 12(b)(1) motion, the court can consider, as it did in this case, evidentiary matters outside the pleadings.") (citations omitted).

The Contract Disputes Act governs Bristol Bay's claims. See Compl. ¶¶ 1, 7; 25 U.S.C. § 450m-1(a), (d) (the ISDEAA directs that, for all civil actions against the Government for monetary relief, the CDA applies); 41 U.S.C. § 609(a). On July 17, 1996, and August 11 and 26, 1997, respectively, Bristol Bay entered into compacts and AFAs for FYs 1997 and 1998. See Ex. A.[6] Because these documents were signed after the implementation of the CDA's statute of limitations, 41 U.S.C. § 605(a), this statute of limitations applies to the compacts and their related AFAs.

Pursuant to 41 U.S.C. § 605(a) for contracts entered into on or after October 1, 1995, a contractor has six years to bring a claim to a contracting officer following the date the claim accrued. 41 U.S.C. § 605(a) ("Each claim by a contractor against the government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim."). The CDA is a waiver of sovereign immunity and the time limitations found therein operate as conditions on that waiver. James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996). Statutory time limits in the Court of Federal Claims are jurisdictional in nature. See

[6] The entire set of agreements for FYs 1993-99 are included in the agency's Administrative Record. Defendant attaches hereto only the relevant title and signature pages of the ATHCs and AFAs for FYs 1997 and 1998, to indicate the dates the parties signed them.

generally John R. Sand & Gravel Co. v. United States, 552 U.S. ___ (2008) (28 U.S.C. § 2501, the six-year statute of limitations for filing claims in the Court of Federal Claims, is a strict jurisdictional requirement that cannot be waived and is not susceptible to equitable considerations); Bianchi v. United States, 475 F.3d 1268, 1274 (Fed. Cir. 2007).

For purposes of 41 U.S.C. § 605(a), a cause of action for breach of an ISDEAA contract accrues on the last day of the applicable contract year (which corresponds with the Federal fiscal year). See Oceanic S.S. Co. v. United States, 165 Ct. Cl. 217, 225 (1964) ("A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action. Therefore, where a claim is based upon a contractual obligation of the Government to pay money, the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract.") (internal citations omitted).

Applying these principles, Bristol Bay's claims under the 1997 contract accrued by the end of September 1997, and the statute of limitations on these claims expired by September 2003. Bristol Bay's claims under the 1998 contract accrued by the end of September 1998, and the statute of limitations on these claims expired by September 2004. Bristol Bay did not submit any of its claims for contract years 1997 through 1998 to the contracting officer until July 5, 2005. See Compl. ¶ 5. Each of Bristol Bay's claims for FYs 1997-98 thus fails the CDA's six-year statute of limitations period. 41 U.S.C. § 605(a). Consequently, the Court lacks subject matter jurisdiction over those claims.

## II. BRISTOL BAY'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Legal Standard Under RCFC 12(b)(6)

To survive a motion to dismiss pursuant to RCFC 12(b)(6) the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). Moreover, the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

In ruling on a RCFC 12(b)(6) motion to dismiss, the Court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). However, in deciding whether to dismiss a complaint upon the basis of claim preclusion under RCFC 12(b)(6), this Court can consider prior court decisions and court filings between the same parties, which are matters of public record. See Biomedical Patent Management Corp. v. California, No. 2006-1515, 2007 WL 3071687 at *12 n.1 (Fed. Cir. Oct. 23, 2007) (district court did not abuse its discretion for taking judicial notice of several court filings from prior litigation between the parties); Curtis v. United States, 212 Fed. Appx. 991 (Fed. Cir. 1991) (in dismissing plaintiff's breach of contract claim on claim preclusion grounds, the trial court took judicial notice of its prior decision involving the identical parties ). Moreover, "[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Blaze Constr., Inc. v. United States, 27 Fed. Cl. 646, 650 (1993).

**B. In Considering A Motion To Dismiss Under RCFC 12(b)(6), The Court Should Consider Not Only Plaintiff's Complaint, But Also The Contracts That Are Central To Plaintiff's Allegations**

In deciding whether to dismiss a complaint under RCFC 12(b)(6), this Court may examine and consider the undisputed contract documents that are central to plaintiff's claim, without converting defendant's motion into one for summary judgment. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citing 5B. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 and Supp. 2007); W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638, 647 n.7 (1997) (Court treated solicitation documents, provided by defendant, as incorporated to the complaint for purposes of RCFC 12(b)(6). "While plaintiff did not attach a copy of the solicitation as an exhibit to its complaint, RCFC 9(h)(3) requires a plaintiff to include with its complaint a copy of all contract documents upon which its claim is founded.").

RCFC 9(h)(3) requires that, as an attachment to its complaint, a plaintiff must include "a description of the contract sufficient to identify it" and "shall annex to the complaint a copy of the contract . . . ." Bristol Bay did not annex a copy of the AFAs to the complaint. However, even in situations in which the "plaintiff is under no obligation to attach to her complaint documents upon which her action is based," the "defendant may introduce certain pertinent documents if the plaintiff failed to do so." Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

Thus, the Court may consult any documents that are contained or cited in the pleadings, without treating this motion as a summary judgment motion. E.g., Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 & n.4 (8th Cir. 2003); Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42 (2d Cir. 1991); see also Southern Cal. Edison Inc. v. United States, 58 Fed. Cl. 313, 321 (2003) (construing contract on motion to dismiss). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Cortec, 949 F.2d at 48 (emphasis added); accord Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949-50 (6th Cir. 1990) ("[T]he language of the Plan, and the arguable meanings of its terms, were central to the plaintiffs' complaint, and were part of the pleadings before the district court."); Haskell v. Time, Inc., 857 F. Supp. 1392, 1397-98 (E.D. Cal. 1994).

Furthermore, the Court can exercise its right to take judicial notice of the contracts, which are public documents and matters of public record. See Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999) ("In deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record.") (citations omitted). Because Bristol Bay's contracts with the United States are public documents and matters of public record, the Court is entitled to take judicial notice of their contents. Tellabs, Inc., 127 S. Ct. at 2509; Sebastian, 185 F.3d at 1374.

For the reasons provided, we have attached to our motion to dismiss relevant pages from the FY 1995 AFA and Addendum, and the Indian Self-Determination Memorandum ("ISDM") 92-2, which Bristol Bay alleges the United States breached. Compl. ¶ 14 (citing the FY 1995 AFA § 4(b) and ISDM 92-2); see Exs. B (FY 1995 AFA & Addendum) and C (ISDM 92-2).

Because the AFAs are central to Bristol Bay's allegations and are referenced in the complaint, see Compl. ¶¶ 1, 2, 3, 4, 8, 9, 10, 14, 35, 36, they are incorporated therein. See Tellabs, Inc., 127 S. Ct. at 2509; W & D Ships Deck Works, Inc., 39 Fed. Cl. at 647 n7.[7] For the reasons explained above, this Court is entitled to review and consider the AFAs and ISDM 92-2 in ruling upon this motion to dismiss.

### C. **Bristol Bay Is Not Entitled To Additional CSC**

The gist of Bristol Bay's complaint is that defendant failed "to pay the full CSC required by the ISDEAA." Compl. ¶ 3. In other words, Bristol Bay argues that defendant failed to pay Bristol Bay an additional amount of indirect CSC required *by statute*, above and beyond what was specified in the contracts. See Compl. ¶¶ 16, 19, 22, 27, 34.[8] Such an allegation, however, runs directly contrary to the Supreme Court's holding in Cherokee Nation, which mandates that the an ISDEAA contract be treated as any other procurement contract, where the parties are to rely on the terms and conditions therein. Cherokee Nation v. Leavitt, 543 U.S. 631, 643-45 (2005). As a matter of law, therefore, the mere fact that the contracts were entered into pursuant to the ISDEAA does not entitle Bristol Bay to an additional amount of indirect CSC, beyond what the parties expressly agreed to in the AFAs.

---

[7] If the Court determines that it is inappropriate to review these materials without converting this motion into one for summary judgment, we respectfully request that the Court disregard this material for purposes of our motion pursuant to RCFC 12(b)(6).

[8] Although Bristol Bay asserts in conclusory fashion that its claim presents a "contract theory," see Compl. ¶ 34, that assertion rests upon Bristol Bay's argument that the AFAs incorporate the ISDEAA. However, even though the AFAs refer to the ISDEAA, nothing in the ISDEAA provides that Bristol Bay will be paid any particular amount, let alone one greater than the amount provided in the AFAs.

That is so because the ISDEAA does not mandate the payment of a specific amount of indirect CSC or that a specific formula be included in a contract. Rather than providing a specific dollar amount for funding, the ISDEAA requires that the parties negotiate a contract. See e.g., 25 U.S.C. §§ 450b(g); 450j(c). An ISDEAA contract negotiation starts with a contractor's proposal. See 25 U.S.C. §§ 450f(a)(2), 450j-1(a)(3)(B); 25 C.F.R. §§ 900.12, 900.8(h). A contract proposal will be accepted if the Secretary agrees to the proposed terms. See 25 U.S.C. § 450f(a)(2). If the Secretary declines the proposal, the Tribe or Tribal organization may: (1) challenge the Secretary's declination in an administrative proceeding or directly in federal court as inconsistent with the ISDEAA, see id. §450f(b)(3), or (2) acquiesce in the terms offered by the Secretary and accept the contract and funding.

If the contractor does not avail itself of immediate review and instead acquiesces in the amount of funding proposed by the IHS, the contractor is bound by the negotiated amount in the executed contract. If the contractor determines at a later time that the amount of funding is insufficient, it can suspend operation of the contract or retrocede the program for lack of funding. See id. §§ 450*l*(c)(b)(5), 450j(e). In future annual funding agreement negotiations, the contractor may again propose desired terms and if they are rejected by IHS, the contractor can force a declination and obtain review in Federal court. The availability of immediate judicial review prior to contract formation demonstrates Congress's intent that a Tribe or Tribal organization challenge the Secretary's rejection of the proposed amounts at the time of contract formation. The statutory scheme and purpose demonstrate that there is no "independent" right under the ISDEAA to CSC.

The United States Court of Appeals for the Federal Circuit reached this same conclusion in Samish Indian Nation v. United States, 419 F.3d 1355 (Fed. Cir. 2005). In Samish, the Federal Circuit reviewed the ISDEAA and determined that its funding provisions did not curtail the Secretary's discretion to pay funds; did not set clear standards for the Secretary's payment of funds; did not specify precise amounts to be paid; and did not compel the payment of funds. See 419 F.3d at 1365-67 ("Absent a contract the ISDA does not confer a private damage remedy for either type of funding."); see also Pueblo of Zuni v. United States, 467 F. Supp. 2d 1114, 1116-17 (D.N.M. 2006) (tribes may not bring claims for additional contract funding under the ISDEAA alone). Therefore, Bristol Bay's argument that the ISDEAA demands an additional amount of payment under the AFAs fails. It is the AFAs themselves that create an entitlement to CSC, the scope of which is determined under traditional contract principles. See Cherokee Nation, 543 U.S. at 639; Samish, 419 F.3d at 1364; Pueblo of Zuni, 467 F. Supp. 2d at 1116-17.

In sum, there is no contract provision - whether by ISDEAA interpretation or otherwise that requires the payment of the claim at issue. Thus, Bristol Bay's claim fails because it presents no more than a "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp., 127 S. Ct. at 1965. Applying traditional contract principles, there has been no breach.

This becomes clear upon examination of the AFAs, which are the controlling contract documents in this case. For example, Bristol Bay cites Section 4(b) of the FY 1995 AFA. That provision states:

> b) Subject to Congressional appropriation, an additional lump sum amount shall be added to this Agreement for the Bristol Bay Area Health Corporation under ISDM 92-2 or its successor. The amount shall be based upon the Bristol Bay Area Health Corporation's indirect cost agreement and applicable law and will be added to

> this Agreement as soon as available through appropriations, indirect costs shall be negotiated for this Annual Funding Agreement in compliance with Section 106(d)(1) and 106(e) of the Indian Self-Determination and Education Act, as amended.
>
> 1. Indirect/contract support funds: $590,428

Ex. B at 3 ¶ 4(b).

In short, while the amount of indirect CSC is subject to the availability of funding for each fiscal year, the agreed amount is expressly stated in the AFA per negotiation between the parties. In this case, the amount agreed upon for FY 1996 was $590,428. Id. Nevertheless, should more funding become available during the fiscal year, the parties are free to negotiate a different amount of indirect CSC. For example, the parties negotiated an addendum to the FY 1995 AFA, which included a Section 4(b) clause stating a new amount of indirect CSC of $787,396. Ex. B at 5 ¶ 4(b). A plain reading of the AFA provisions cited by Bristol Bay, particularly Section 4(b), do not support Bristol Bay's assertions that it is entitled to additional indirect CSC, beyond what the parties have negotiated and agreed to in the AFAs.

Similarly, ISDM 92-2 does not further Bristol Bay's argument. This document merely provides background on Section 106(a), definitions, and procedures for computing various types of CSC. Ex. C. Nothing in ISDM 92-2 supports Bristol Bay's assertions that it is entitled to additional CSC, beyond what the parties negotiated in the AFAs. Bristol Bay fails to allege any fact or to cite any provision of ISDM 92-2 that suggests otherwise.

Furthermore, Bristol Bay's reliance on "shortfall reports" is misplaced. See Compl. ¶¶ 17-19, 27-32. Bristol Bay does not allege that the shortfall reports are contract documents. See Compl. A plain reading of the reporting requirements under Section 106(c) demonstrates that the agency is not required to report deficiencies of payment in specific AFAs. That is because the

amounts agreed to in the AFAs are negotiated between the parties. See e.g., 25 U.S.C. §§ 450f(a)(1), (2), 450j-l(a)(3)(B); 25 C.F.R. § 900.12, 900.8(h). Rather, Section 106(c) of the ISDEAA requires the agency to submit much broader fiscal information to Congress, as follows:

> **(c) Annual reports**
>
> Not later than May 15 of each year, the Secretary shall prepare and submit to Congress an annual report on the implementation of this subchapter. Such report shall include—
>
> **(1)** an accounting of the total amounts of funds provided for each program and the budget activity for direct program costs and contract support costs of tribal organizations under self-determination;
>
> **(2)** an accounting of any deficiency in funds needed to provide required contract support costs to all contractors for the fiscal year for which the report is being submitted;
>
> **(3)** the indirect cost rate and type of rate for each tribal organization that has been negotiated with the appropriate Secretary;
>
> **(4)** the direct cost base and type of base from which the indirect cost rate is determined for each tribal organization;
>
> **(5)** the indirect cost pool amounts and the types of costs included in the indirect cost pool; and
>
> **(6)** an accounting of any deficiency in funds needed to maintain the preexisting level of services to any Indian tribes affected by contracting activities under this subchapter, and a statement of the amount of funds needed for transitional purposes to enable contractors to convert from a Federal fiscal year accounting cycle, as authorized by section 450j(d) of this title.

25 U.S.C. § 450j-l(c). Nothing suggests that a requirement of need for additional funds translates to a contractual requirement to pay that amount, even though Congress failed to make funds available to do so. Thus, the agency can pay a contractor the exact amount of CSC agreed to in an AFA, and still report a "shortfall" to Congress. Therefore, to the extent that Bristol Bay's

claim assumes that the shortfall reports referenced in the complaint imply that the Government failed to pay the amounts due Bristol Bay under the AFAs, Bristol Bay is mistaken.

### D. Bristol Bay's Claims For FY 1995 Are Barred By Res Judicata

Bristol Bay's claim for additional indirect CSC for FY 1995 in the amount of $1,882,904, see Compl. ¶ 30, is barred from further judicial consideration by res judicata, or claim preclusion. Under this doctrine "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores Inc. v Moitie, 452 U.S. 394, 398 (1981). The purpose of res judicata is "an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled between the parties." Id. at 401. The party moving for dismissal under res judicata must establish "that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003).

Here, each element of the doctrine of res judicata is met. Identity of parties is established by the fact that the parties in the instant case, Bristol Bay and the United States, are the same as in Bristol Bay's prior action in the Alaska district court. Specifically, in the 1995 lawsuit, Bristol Bay was one of three named plaintiffs and the defendants were Donna E. Shalala, Secretary of the DHHS, Dr. Michael Trujilo, the Director of the IHS, and DHHS, a Federal agency. See Ex. D. In the 1995 lawsuit, therefore, the United States was the defendant. See Schrader v. United States, 75 Fed. Cl. 242, 249 (2007) (citing Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a

judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.")); see Ammex, 334 F.3d at 1055.

The second element is established because voluntary dismissal of a case with prejudice "operates as a final adjudication on the merits and has a res judicata effect." Boynton v. Headwaters Inc., 243 Fed. Appx. 610, 616 (Fed. Cir. 2007) (quoting Warfield v. AlliedSignal TBS Holdings, Inc., 267 F.3d 538, 542 (6th Cir. 2001). Thus, when the Alaska district court dismissed Bristol Bay's lawsuit with prejudice, pursuant to the stipulated agreement of the parties, this served as a final judgment on the merits. See Ex. F; Inland Steel Company v. LTV Steel Company, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (quoting Anthony v. Marion County Gen. Hosp., 617 F.2d 1164, 1169-70 (5th Cir. 1980) ("dismissal with prejudice is deemed an adjudication on the merits for the purposes of res judicata")); Ammex, 334 F.3d at 1055.

The third element of res judicata is established because the instant case and the prior Alaska district court case stem from the same underlying transaction: Bristol Bay's action to recover CSC for FY 1995 under the CDA. In the complaint, Bristol Bay acknowledges that since FY 1995, it "has been a Co-Signer of the Alaska Tribal Health Compact ("ATHC"), under which annual funding agreements ("AFAs") were negotiated pursuant to Title III of the ISDEAA." Compl. ¶ 8. For FY 1995, Bristol Bay "asserts a shortfall claim under the ISDEAA, the ATHC and the FY 1995 AFA in the amount of $1,882,904." Compl. ¶ 30. Similarly, Bristol Bay's 1995 lawsuit was based upon these same agreements and statute identified in the complaint, i.e., the ATHC, the FY 1995 AFA, and accompanying Addendum, which were negotiated pursuant to Title III of the ISDEAA. See Ex. D at ¶ 24 ("In Section 4(b) of BBAHC's Addendum the IHS

agreed to pay the Corporation $640,396.00"); ¶ 25 ("the total amount that the IHS is obligated to pay BBAHC in one annual lump sum payment under the Compact, AFA and Addendum is $16,302,998.80."); and ¶ 53 ("Congress appropriated funds, including contract support costs, by means of a general appropriation sufficient to fund the Alaska Tribal Compact and other compacts negotiated under Title III of the Act for the 1995 fiscal year."). Bristol Bay's current complaint is thus based upon the same transactional facts as the Alaska case. Ammex, 334 F.3d at 1055.

Bristol Bay asserts differing legal theories in the two lawsuits. In the 1995 complaint, for example, Bristol Bay argued that the specific amount of CSC owed by the Government was negotiated by the parties and specifically set forth in the FY 1995 agreements. See Ex. D at ¶ 54 ("Plaintiffs negotiated in good faith with the IHS the amount of contract support costs that the parties ultimately agreed to identify in the AFAs and Addenda."). Bristol Bay now alleges, however, that IHS should have reprogrammed money from its lump-sum appropriation to pay the difference between the amount IHS awarded Bristol Bay in the FY 1995 agreements, and what Bristol Bay now claims is the "full amount" of indirect CSC. Compl. ¶ 3, 16, 27.

For res judicata purposes, Bristol Bay's assertion of a new legal theory is without consequence. For "[w]hile plaintiff's legal theories differ, '[t]he assertion of different legal theories in a second suit will not defeat application of res judicata.'" Schrader, 75 Fed. Cl. at 249 (quoting Ness Inv. Corp. v. United States, 219 Ct. Cl. 440, 595 F.2d 585, 588 n.6 (1979)); see also Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984) (for res judicata purposes, a claim is based upon "the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."). With respect to Bristol Bay's

new legal arguments in the complaint, the doctrine of res judicata bars all claims arising out of the same nucleus of facts that either "were or could have been raised" in the earlier action. See Federated Dep't Stores, 452 U.S. at 398. Bristol Bay's claim for FY 1995 thus "meets the third and final element of the Ammex test and is therefore subject to preclusion under the doctrine of res judicata." Schrader, 75 Fed. Cl. at 249.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be granted.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Joseph A. Pixley
JOSEPH A. PIXLEY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L. Street, N.W.
Attn: Classification Unit 8th Floor
Washington, D.C. 20530
Tel. (202) 307-0843
Fax: (202) 307-0972

Attorneys for Defendant

Of Counsel:

SCOTT S. DRIGGS
Assistant Regional Counsel
U.S. Department of Health and
Human Services
1961 Stout Street, Room 325
Denver, Co 80294
Tel: (303) 844-7808
Fax: (303) 844-6665

January 30, 2007