# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **BRISTOL BAY AREA HEALTH CORPORATION** | ) | |
| PLAINTIFF, | ) | No. 07-725C<br>Hon. Margaret M. Sweeney |
| v. | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1) of the Rules of the Court of Federal Claims, Plaintiff Bristol Bay Area Health Corporation ("BBAHC") submits the following statement of material facts as to which it believes there is no genuine dispute, and on which BBAHC bases its Motion for Summary Judgment.

1. BBAHC is a nonprofit corporation representing and providing health care services to 34 Native Villages in Southwest Alaska. Defendant's Motion to Dismiss ("Def. MTD") at 5.

2. BBAHC is a tribal organization as defined in the Indian Self-Determination and Education Assistance Act ("ISDEAA"). 25 U.S.C. § 450b(*l*). BBAHC's member tribes have authorized BBAHC, by tribal government resolution, to enter self-determination contracts and, since fiscal year 1995, self-governance compacts and annual funding agreements ("AFAs") with the United States, through the Secretary of Health and Human Services ("Secretary") and the Indian Health Service ("IHS") (collectively, the "Government"), pursuant to the ISDEAA.

3. In FY 1993 and FY 1994, BBAHC provided health care programs, functions, services and activities ("PFSAs") pursuant to Contract No. 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 and modifications

thereto. Def. MTD at 5. BBAHC fully performed, in each fiscal year, under the terms of the contract.

4. In FY 1995, BBAHC became one of the original Co-Signers of the Alaska Tribal Health Compact ("Compact"), and negotiated an annual funding agreement with the Secretary under Title III of the ISDEAA. Defendant's Exhibit ("Def. Ex.") E; Def. MTD at 5. In each of the four fiscal years thereafter, FY 1996 through FY 1999, BBAHC entered successor AFAs pursuant to the Compact and Title III. Def. MTD at 5; Def. Ex. A, B, C & D. BBAHC fully performed, in each fiscal year, under the terms of the Compact and AFA.

5. Section 106(a) of the ISDEAA requires that contract support costs ("CSC") "shall be added" to tribes' contracts and AFAs. 25 U.S.C. § 450j-1(a). Section 106(g) emphasizes that "the Secretary shall add to the contract the full amount of funds to which the contractor is entitled under section 106(a)." 25 U.S.C. § 450j-1(g). BBAHC's contracts incorporated this statutory requirement. *E.g.*, FY 1997 AFA § 4(b) ("Pursuant to section 106(a)(2) of the [ISDEAA], BBAHC shall receive contract support as defined in sections 106(a)(2) and (3)."); FY 1998 AFA § 4(b) (same).

6. BBAHC and the Government also entered related agreements known as indirect cost rate agreements. These agreements were negotiated with the Secretary through the Department's Division of Cost Allocation, and established the rate at which the IHS would reimburse indirect costs for a given fiscal year. To determine the amount of indirect cost funding due to BBAHC, the indirect cost rate would be multiplied by the dollar amount of the direct cost base to yield the dollar amount of the indirect cost requirement. *E.g.*, Def. Ex. E at A11 (amount for indirect costs "shall be based upon the [BBAHC's] indirect cost agreement"); Appendix to

Memorandum in Support of Plaintiff's Motion for Summary Judgment, Exhibit ("Pl. Ex.") B1 (indirect cost agreements for FY 1993-1995).

7. BBAHC's contracts and AFAs incorporated the indirect cost rates established in the rate agreements. Contract No. 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, § G.1.E ("Indirect Costs during the period of this contract shall be reimbursed at rates established by agreement between the Contractor and the Division of Cost Allocation, Region X, Department of Health and Human Services. No deviation from the established rate will be made without approval of the Office of Regional Director, Division of Cost Allocation, Department of Health and Human Services, as evidenced by a formal rate negotiation agreement."); Def. Ex. F at A13 (FY 1995 AFA addendum provision that "Indirect/Contract Support amounts ... shall be based upon the [BBAHC]'s indirect cost agreement...."); FY 1996 AFA § 4(b) (IHS agrees to pay CSC in accordance with agency manual ISDM 92-2, which requires use of indirect cost rates for tribal organizations that have negotiated them)[1]; *id*. App. A at 2 n.13 ("All co-signers with indirect cost rates utilized the most current negotiated rate applied according to the terms and conditions approved by their cognizant federal agency."); FY 1997 AFA, § 4(a) table and Appendix ("App.") C (multiplying indirect cost rate times "total base" to calculate indirect costs, as part of computation of CSC on tribal shares); FY 1998 AFA, § 4(a) table and App. B (same); FY 1999 AFA, § 4(a) table and App. B (same).

8. For FYs 1993-1999, Defendant failed to pay BBAHC the full indirect costs required under its contract, as calculated by applying the negotiated indirect cost rate to the final direct cost base for the fiscal year. The agency itself documented these "shortfalls" in annual

---

[1] *See* Def. Ex. G at A19 (Indian Self-Determination Manual ("ISDM") 92-2, § 5.B) (for recipients with established rates, "indirect costs ... will be determined by applying the negotiated rate(s) to the direct cost base amount for this purpose").

reports to Congress, as required by the ISDEAA. 25 U.S.C. § 450j-1(c); Pl. Ex. A1 (shortfall reports for FYs 1993-1999).

9. On July 5, 2005, BBAHC requested a contracting officer's decision on its claims for FYs 1995-1999. On November 20, 2006, BBAHC requested a contracting officer's decision on its claims for FYs 1993 and 1994. Def. MTD at 6; Complaint ¶¶ 5, 25. The IHS denied the claims for FYs 1995 and 1996, and failed to issue a decision on the others within a reasonable time. BBAHC filed this action on October 12, 2007.[2]

Shortfall Claims, FYs 1993-1997

10. In FY 1993, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $2,818,802. The IHS paid $2,477,917, leaving an unpaid CSC shortfall of $340,885. Pl. Ex. A1 at A1 (IHS shortfall report for FY 1993).[3]

11. In FY 1994, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $4,941,844. The IHS paid $2,848,960, leaving an unpaid CSC shortfall of $2,092,884. Pl. Ex. A1 at A2 (IHS shortfall report for FY 1994).

12. In FY 1995, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $5,033,675. The IHS paid $3,150,771, leaving an unpaid CSC shortfall of $1,882,904. Pl. Ex. A1 at A3 (IHS shortfall report for FY 1995).

---

[2] Subsequently, the IHS denied the FY 1997 and FY 1998 claims, on October 17, 2007.

[3] For purposes of this motion, the shortfall reports are being used to establish the fact that the full amount of CSC was not paid. Since the issue of damages may be addressed by the court separately, we accept for the purposes of this motion the amounts the IHS excluded from the direct cost base prior to applying the indirect cost rate in these reports, although BBAHC does not entirely agree with the decisions. *See* e.g., Pl. Ex. A at 1, column 8 (excluding $680,872)); *id* at 2, column 7 (excluding $513,019).

13. In FY 1996, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $5,102,767. The IHS paid $2,882,517, leaving an unpaid CSC shortfall of $2,220,250. Pl. Ex. A1 at A4-A5 (IHS shortfall report for FY 1996).

14. In FY 1997, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $5,689,321. The IHS paid $4,327,724, leaving an unpaid CSC shortfall of $1,361,597. Pl. Ex. A1 at A6 (IHS shortfall report for FY 1997).

15. In each year, FY 1993-1997, the IHS had available a lump-sum appropriation sufficient to pay BBAHC's CSC requirement in full. *Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075, 1093-94 (Fed. Cir. 2003); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 643-44 (2005).

Stable-Funding Claims, FYs 1998 and 1999

16. Section 106(b) of the ISDEAA mandates that the IHS not reduce funding from year to year for CSC unless one of five narrow exceptions applies. 25 U.S.C. § 450j-1(b)(2).

17. BBAHC's Compact and AFAs for FYs 1998 and 1999 incorporate this statutory stable-funding requirement. Alaska Tribal Health Compact, Art. II, § 12(a) ("future funding of the Co-Signer's successor Annual Funding Agreements shall only be reduced pursuant to the provisions of § 106(b) of the [ISDEAA]," subject to adjustments in accordance with reallocation decisions of the Co-Signers); FY 1998 AFA § 4(a) (funding amounts "subject to reductions only in accordance with Section 106 of [the ISDEAA] during the term of this Annual Funding Agreement or thereafter"); FY 1999 AFA § 4(a) (same).

18. The IHS's CSC policy manual applicable for these years, IHS Circular 96-04, also incorporates the statutory stable-funding requirement and conditions. In relevant part, the Circular provides that, "Prior year funds provided for indirect CSC to each awardee, if justified in subsequent years, shall not be reduced by the IHS, except as authorized in section 106(b) of the [ISDEAA]." Pl. Ex. C1 at A24 (IHS Circular No. 96-04 § 4.A(4)c).

19. In FY 1997, according to the IHS's own calculations, BBAHC's total indirect costs requirement, as calculated by applying the negotiated rate, was $5,689,321. Pl. Ex. A1 at A6 (IHS shortfall report for FY 1997). Had the IHS paid this amount, as required by law, it would have been required to pay, and would in fact have paid at least the same amount in FY 1998, as required by the ISDEAA, the contract provisions cited in paragraph 16 above, and the agency's own Circular. But in FY 1998, the IHS paid only $4,751,670, a shortfall in the amount of $937,651 Pl. Ex. A1 at A7 (IHS FY 1998 shortfall report, column O).

20. Had the IHS followed the stable-funding requirement in FY 1998, it would have paid BBAHC at least $5,689,321, and thus would have been required to pay, and would in fact have paid, at least that amount again in FY 1999. But in FY 1999, the IHS paid only $5,392,916, a shortfall in the amount of $296,405. Pl. Ex. A1 at A8 (IHS FY 1999 shortfall report, column.

Respectfully Submitted,

s/Geoffrey D. Strommer by s/Lisa F. Ryan_
Geoffrey D. Strommer, Attorney of Record
Stephen D. Osborne, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)

s/Lisa F. Ryan
Lisa F. Ryan, Of Counsel
Marsha Kostura Schmidt, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Attorneys for the Bristol Bay Area Health Corporation

DATED: April 15, 2008.