# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **BRISTOL BAY AREA HEALTH CORPORATION**<br><br>PLAINTIFF,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>DEFENDANT. | ) | No. 07-725C<br>Hon. Margaret M. Sweeney |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

The United States has filed a motion to strike certain exhibits filed by the Bristol Bay Area Health Corporation ("BBAHC") with its opposition papers. The thrust of the Government's motion appears to be that the Plaintiff is prohibited from providing any documents to the court to counter its motion to dismiss. This is of course not true. It is up to the Court to decide if the documents should be considered in assessing the motion. If the Court finds the extrinsic evidence pertinent, then it may consider the information and if it does, it must convert the motion to one for summary judgment. This is a fairly common way of handling motions to dismiss. For example, one court expressly addressed the submission of extrinsic evidence by a plaintiff in opposition, as BBAHC had done here, and the court describes the consequences. "A motion to dismiss for failure to state a claim is treated as a motion for summary judgment under Rule 56 if 'matters outside the pleading are presented to and not excluded by the court.' RCFC 12(b). Here, plaintiff included materials extrinsic to the pleadings, Pl.'s Opp. Exs. A-D, and these were considered by the court in arriving at its decision. The court must therefore address defendant's motion to dismiss as a motion for

summary judgment under RCFC 56. RCFC 12(b)." *Arakaki v. United States*, 62 Fed. Cl. 244, 260-61 (2004).

So too, here the Court must consider the relevance of each document submitted. We think that making that decision in the context of a motion to strike is inappropriate since the best way to gauge the importance of the document is for the Government to respond to the evidence and explain why the documents should not be considered in the context of its motion to dismiss. *See e.g.*, *Ryco Const., Inc. v. United States*, 55 Fed. Cl. 184, 195 (2002) (decided motion to strike declaration in context of motion for summary judgment).

Be that as it may, we will address the motion to strike, but we urge the Court to consider the documents in full context. The Government addresses each document in turn and we will respond in kind.

1. *Plaintiff's Exhibit B - Indirect Cost Rate Agreements.* The Government makes two arguments. First, it claims that the documents were not attached to the complaint as required by RCFC 9(h)(3) and therefore cannot be considered. However, since this is a case under the Contract Disputes Act, RCFC 9(h)(3) is not applicable because BBAHC's claim "is not founded upon a contract, but instead on an agency action that related to its contract." *Info. Sys. & Networks Corp. v. United States*, 64 Fed. Cl. 599, 603 (2005); *ATK Thiokol, Inc. v. United States*, 76 Fed. Cl. 654, 664 (2007). There is no duty to attach all contract documents in this instance.

We would note also that the documents *are* referenced in the complaint. In Paragraph 14, BBAHC explains the process of the calculation of CSC in determining the full amount of CSC which must be paid under the statute. The complaint states, "In the agreements [i.e., the contracts and AFAs] the IHS agreed to calculate and pay IDC in accordance with Indian Self

Determination Memorandum ('ISDM') 92-2 *and BBAHC's indirect cost agreements*." (Emph added). When the Government briefed its motion to dismiss, it conveniently ignored this language and the documents. When it selected "relevant pages" from the record, it attached the ISDM and excerpts from the AFA, and the AFA, the complaint, and even the ISDM all reference the indirect cost agreements. *See* MTD at p. 13.[1] These references are fully adequate to place these documents within the Court's reviewing authority. *See Info. Sys.*, 64 Fed. Cl. at 603-604 (incorporation of documents by reference is sufficient).

The Government used the selected documents it provided to the court to argue that the AFAs do not call for a specific amount of CSC. See MTD at 16. Even though it has filed a motion to dismiss, the Government has essentially challenged the above-quoted factual allegations in the complaint and ignored the reference to the indirect cost agreements in the contract document and the complaint. This moves the Government's motion beyond a motion to dismiss, which requires the Government to treat the allegations in the complaint as true. This it has not done. Instead it has selected facts and documents to support its case and it is now seeking to exclude other documents that it should have considered or acknowledged when it filed its motion. Our opposition rectifies the record evidence before the court and establishes that the AFAs *do* call for a specific amount--that arrived at by using the indirect cost agreement. The AFA is quoted at p. 16 of the Government's own motion and it says "The amount shall be based upon Bristol Bay Area Health Corporation's indirect cost agreement and applicable law...." The Government may want to wish away this reference

[1] This is one reason why BBAHC moved to have the entire CDA appeal file to be lodged with the Court. We believed that these documents were part of the record of decision in denying the CDA claim.

and the clear language of the complaint, but the evidence proffered by BBAHC is key to understanding its claim and it has been submitted largely due to the Government's omission.

2. *Plaintiff's Exhibit C - Affidavit of Robert Clark*. In tandem with the indirect cost agreements, BBAHC submitted an affidavit by Robert Clark, CEO of BBAHC, which describes the process of indirect cost payment. The Government seeks to strike this affidavit, which was submitted to refute directly a factual allegation urged by the Government that cannot be found in the complaint. In its motion to dismiss, the Government maintains that addendums which add money to the contract are "negotiated." MTD at 17. This fact does not appear in the complaint, largely because it is not true. The Government asserted this fact with no support. Yet it is key to the Government's argument that a specific amount of CSC is negotiated, apparently in increments, that BBAHC acquiesced to the amounts actually paid, and that as a result BBAHC is not entitled to be paid more.

Of course, BBAHC could not allow this unsubstantiated and untrue fact to go unanswered. This Court should be aware if a factual allegation is false. Moreover, once again, the Government has gone beyond the factual allegations in the complaint in an effort to support its motion to dismiss. If the motion is converted, it is the Government's own doing, since it has created the factual dispute by making an unsupported allegation.

3. *Plaintiff's Exhibit D - Seldovia IBCA Ruling*. In its motion to dismiss, the Government claimed that the statute provided to BBAHC an option to acquiesce in the amount of funds provided by the Secretary. Our argument goes to establishing that the statute allows no such thing and the Board in the *Seldovia* case agreed. Apparently, the Government does not think that BBAHC has the right to inform the Court when another

forum has ruled on a legal issue pending before it. The Government claims it was not arguing waiver, but rather that the statute permits acquiescence.

We have reexamined the Government's original motion, since it is quoted at length in the motion to strike. *See* Motion to Strike at 4. The Government claims that 25 U.S.C. §450f(b)(2) provides that a tribal organization may "acquiesce in the terms offered by the Secretary and accept the contract and funding." *Id. See also,* MTD at 15. Section 450f says no such thing in any paragraph. Section 450f(b)(2) says that upon a declination the Secretary shall "provide assistance to the tribal organization to overcome the stated objection." Indeed, we electronically searched the entire ISDEAA and we cannot locate the word "acquiesce." Given the lack of statutory support for the Government's argument, the only other option is to presume that the Government is making a case for waiver by action or inaction. Not only does the word "acquiesce" not appear in the statute, the very notion that a tribe or tribal organization can implicitly agree to waiver or any other change in contract terms is entirely antithetical to the ISDEAA. All of these issues are addressed in BBAHC's opposition.

4. Plaintiff's Exhibit E - Motion for Reconsideration. The Government complains that BBAHC attached the pleadings filed in support of the motion to reconsider the ruling in *Menominee Indian Tribe of Wisconsin v. United States*. The Government objects on the ground that doing so has allowed BBAHC to exceed page limitations. Our purpose in filing the brief was to inform the court as to the basis of the motion to reconsider, which we believe to be valuable and relevant. We could have included the entire substance of that briefing in the opposition brief and asked for leave to file an brief in excess of 40 pages. But instead we provided the attachment because we felt that including the briefing provided context and also gave the Court an insight into the other CSC cases that are pending. If the Court finds that

this is an improper expansion of the briefing, then we would hereby request leave to file a brief in excess of 40 pages

5. Plaintiff's Exhibits F and G - Excerpts from Government Briefs. The Government seeks to strike these exhibits on the ground that the Government cannot be judicially estopped because it made contrary statements in briefs filed in other cases. Therefore the Court should not consider them. BBAHC made no argument of judicial estoppel. The purpose of bringing the Government's statements to the Court's attention is to show that the Government has no consistent interpretation of the statute or the contracts, that it has made contradictory arguments, and whatever it says about the meaning of either should not be given any deference here.

CONCLUSION

In sum, there is no basis to strike any of these exhibits. Furthermore, we object to granting the Government any additional time to respond. None of the material presented is a surprise to the Government. The Government negotiates indirect cost agreements, they are part of the BBAHC contract, and were presumably part of the record before the agency when it made its CDA ruling.

In addition, there are many CSC cases pending in courts throughout the country. The Government is fully aware of these cases and the Government has on its brief an IHS attorney who presumably is fully familiar with the litigation and the Department's position on these matters. Both parties have fully utilized the briefings, rulings, and attachments used by both parties in other cases to counter similar arguments and factual assertions. For example, the Government has already filed an opposition to the motion to reconsider in the *Menominee*

case. Thus, any materials needed to respond are available, and granting extra time to the Government is neither necessary nor appropriate.

Respectfully Submitted,

s/ Geoffrey D. Strommer by s/ Lisa F. Ryan
Geoffrey D. Strommer, Attorney of Record
Stephen D. Osborne, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)

s/ Lisa F. Ryan
Lisa F. Ryan, Of Counsel
Marsha Kostura Schmidt, Of Counsel
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Attorneys for the Bristol Bay Area Health Corporation

DATED: April 24, 2008.